910 So.2d 381 (2005)
Hoyte S. WHITLEY and Martha R. Whitley, Appellants,
v.
ROYAL TRAILS PROPERTY OWNERS' ASSOCIATION, INC., et al., Appellees.
No. 5D04-1344.
District Court of Appeal of Florida, Fifth District.
September 16, 2005.
*382 Howard L. Cauvel of Rano, Cauvel, & Ceely, P.A., DeLand, for Appellants.
Wayne Tosko, of Vasquez & Tosko, LLP, Orlando, for Appellees.
THOMPSON, J.
Hoyte S. Whitley and Martha R. Whitley challenge a final judgment in favor of Royal Trails Property Owners' Association, Inc. ("Association") that would permit either class of owner in the Association to act without the other's consent. We reverse.
The Whitleys own a lot in the Royal Trails subdivision in Lake County. The Association is a Florida corporation organized under Articles of Incorporation (the "Articles"), By-Laws, and a Declaration of Restrictions (the "Declaration") duly recorded in the public record. There are about 110 "living unit" owners and 752 lot owners in the subdivision.
The Whitleys alleged in their complaint for declaratory judgment that the Association acted improperly in allowing a vote of two-thirds of the "living unit" owners to amend certain provisions of the restrictive covenants, including those concerning the minimum size requirement for single family residences and interest rate charges for *383 late payments of assessments. The critical disagreement concerns the Association's interpretation of the Declaration's Article VIII, Section 2, and whether it requires a two-thirds vote of all members of both classes or either class to amend or repeal the restrictive covenants. The Whitleys filed a motion for summary judgment on this question.
Judge Singletary denied summary judgment, ruling that two categories of membership existed under the Association's documents. He reasoned that, because the lots and living units are described disjunctively, the owners of living units may act in all regards to amend the restrictive covenants, Articles, and By-Laws without the participation or consent of the lot owners. Judge Briggs entered the final judgment based upon the law of the case set forth in Judge Singletary's earlier ruling, stating: "majorities of either class of owners in such percentages as required by the governing documents of the Homeowner's Association may without regard to members of the other class, act independently to amend corporate documents or otherwise conduct corporate business affairs, including the sale, transfer or other disposition of common property."
We review de novo the trial court's interpretation of a contract. See Fla. Power Corp. v. City of Casselberry, 793 So.2d 1174, 1178 (Fla. 5th DCA 2001). Interpretation of a contract is a question of law, and an appellate court may reach a construction contrary to that of the trial court. Inter-Active Servs., Inc. v. Heathrow Master Ass'n, Inc., 721 So.2d 433, 434 (Fla. 5th DCA 1998).
The parties' intention governs contract construction and interpretation; the best evidence of intent is the contract's plain language. Royal Oak Landing Homeowner's Ass'n, Inc. v. Pelletier, 620 So.2d 786, 788 (Fla. 4th DCA 1993). The court should reach a contract interpretation consistent with reason, probability, and the practical aspect of the transaction between the parties. Thompson v. C.H.B., Inc., 454 So.2d 55, 57 (Fla. 4th DCA 1984).
When two or more documents are executed by the same parties at or near the same time, in the course of the same transaction, and concern the same subject matter, they will be read and construed together. Courtesy Auto Group, Inc. v. Garcia, 778 So.2d 1000, 1002 (Fla. 5th DCA 2000). Where a writing expressly refers to and sufficiently describes another document, that other document, or so much of it as is referred to, is to be interpreted as part of the writing. Id. Thus, the meaning is gathered from a general view of the whole writing, with all of its parts being compared, used, and construed, each with reference to the others. Specialized Mach. Transp., Inc. v. Westphal, 872 So.2d 424, 426 (Fla. 5th DCA 2004) (citing Paddock v. Bay Concrete Indus., Inc., 154 So.2d 313 (Fla. 2d DCA 1963)).
The developer of the Royal Trails property desired to establish a deed-restricted community and thus created the Association. In so doing, the developer recorded the Declaration, Articles, and the By-Laws of the Association. The Declaration grants each owner of a lot or living unit membership status in the Association. Article III, Section 1 of the Declaration provides that members' voting rights shall be established and defined in the Articles and By-Laws of the Association. The Association contemporaneously created and recorded the Declaration, Articles, and By-Laws, and each document references the others. To interpret one provision, we must compare and construe that provision with reference to the substance of the whole set of agreements.
*384 Article VIII of the Declaration contains the General Provisions; Section 2, entitled "Duration," provides:
Section 2. Duration. The covenants and restrictions of this Declaration shall run with and bind the land, and shall inure to the benefit of and be enforceable by the Association, or the Owner of any land subject to this Declaration, their respective legal representatives, heirs, successors and assigns, for a term of twenty-five (25) years from the date this Declaration is recorded, after which time said covenants shall be automatically extended for successive periods of ten (10) years, unless an instrument signed by the Owners of two-thirds of the lots or living units has been recorded, agreeing to change or repeal said covenants and restrictions in whole or in part. Provided, however, that no such agreement to change shall be effective unless made and recorded three (3) years in advance of the effective date of such change, and unless written notice of the proposed agreement is sent to every Owner at least ninety (90) days in advance of any action taken. (emphasis added)
This provision is the source of the dispute between the parties. This court should view this provision in the context of the duration of the restrictions and the length of time required to effect any changes. The language concerning the two-thirds vote sets an absolute requirement, but the use of the disjunctive term "or" should not produce a result contrary to the voting rights established in the Articles and By-Laws.
Article III of the Articles provides:
Section 1. Membership. The Developer and every person or entity who is a record owner of a fee interest in any Lot or Living Unit in Unit No. 1 of Royal Trails, Lake County, Florida, which is a subject by covenants of record to assessment by this Association, and every person who is a buyer of a lot or living unit in Unit No. 1 of Royal Trails from Royal Palm Beach Colony, Inc. under an executory Agreement for Deed, shall be a member of the Association, provided that any such person or entity who holds such interest merely as a security for the performance of an obligation shall not be a member.
Section 2. Voting Rights. Membership in the Association shall be divided into Class A Membership and Class B Membership.
CLASS A: Every owner of fee simple title to a lot, tract, parcel or Living Unit in Unit No. 1 of Royal Trails, and every buyer of a lot, tract, parcel or Living Unit in Unit No. 1 of Royal Trails from Royal Palm Beach Colony, Inc., under an executory Agreement for Deed therefor, shall automatically be and become a Class A Member of this Corporation; which membership shall cease and terminate upon the sale, transfer or other disposition of the member's lot or Living Unit.
CLASS B: Royal Palm Beach Colony, Inc. shall be the only Class B Member of this Corporation. The Class B Member shall be the only voting member of the Corporation until such time as Royal Palm Beach Colony, Inc., or its successors or assigns, shall have conveyed 80% of the total number of lots covered by the Restrictions, excepting a conveyance in connection with a merger, consolidation, liquidation or other similar plan or a conveyance to the successors or assigns of Royal Palm Beach Colony, Inc. At the time when 80% of the lots have been so conveyed, the Class B Member shall effect an amendment to the By-laws of this Corporation and take such other steps to effect the conversion of *385 the Class A Membership into voting members of this Corporation.

At such time as the Class A Members become voting members of the corporation, the members shall be entitled to one vote for each lot, tract parcel or living unit owned and the Class B members shall be entitled to a total of one vote and to the appointment from time to time at its pleasure and option of one member of the Board of Directors of the Corporation. In the event a lot, tract parcel or Living Unit is owned by more than one owner, the owners shall not be entitled to more than one vote with respect to any such property.
For the purpose of determining voting rights under this Article, when Living Units are counted, the Lot or Lots upon which such Living Units are situated shall not also be counted. (emphasis added)
Article II, Section 5 of the By-Laws, entitled "Voting," guarantees every Association member in good standing the right to vote as specifically set forth in Article III of the Articles. All such persons are entitled to vote upon every proposal properly submitted to a vote in any Association meeting.
This case focuses on the members' voting rights with reference to the restrictive covenants. The Declaration refers to the Articles and By-Laws for the establishment of and definition of voting rights. Each record owner of a lot or living unit has one vote under the Articles. The By-Laws guarantee that every member is entitled to vote upon every properly submitted proposal in any meeting of the Association. Any amendment to the restrictive covenants requires a fifty-one per cent quorum as set forth in the By-Laws and a two-thirds vote as provided in the Declarations. The transaction of ordinary business requires a twenty-five per cent quorum and a majority vote, but even this lesser standard for such business does not except one type of member of the Association for voting purposes. Except for the provision in the Articles that designates the owner/developer as the sole Class B voting member until such time as eighty per cent of the lots are conveyed, there is no provision for treating the other members differently for voting purposes.
When provisions in a contract appear to be in conflict, they should be reconciled, if possible. Seabreeze Restaurant, Inc. v. Paumgardhen, 639 So.2d 69, 71 (Fla. 2d DCA 1994). "An interpretation of a contract which gives a reasonable, lawful and effective meaning to all of the terms is preferred to an interpretation which leaves a part unreasonable, unlawful or of no effect." Id. (citing Herian v. Southeast Bank, N.A., 564 So.2d 213, 214 (Fla. 4th DCA 1990)). To give meaning to the guarantee that every member is entitled to vote on every proposal before the Association, it is inconsistent to interpret that two-thirds of either the lot owners or the living unit owners can amend the restrictive covenants.
The implementation of the trial court's judgment in this case will bring about an impractical and unreasonable result and may further disrupt relations between the owners of lots and living units. The restrictive covenants comprise a uniform and agreed set of rules by which the members agree to live. It is not implausible to foresee that a majority of one class of owner could implement changes in the restrictions that would be unduly onerous on the other class of owner. To interpret the use of the disjunctive term found in the general provisions of the Declarations to weaken the substance of the voting rights set forth in the Articles and By-Laws produces an inequitable and impractical *386 result. It also disenfranchises a large segment of the owners in the Association.
The appellees assert that the Articles authorize the Board of Directors of the Association to "transact all business of the Association. It shall determine the policies and in general assume responsibility for the guidance of the affairs of the Association." The Board apparently interprets this provision to empower them to solicit the votes of only one class of owners to amend or repeal the Declaration. This interpretation of the Association's documents is incorrect.
Accordingly we reverse the final judgment and remand with instructions to grant summary judgment on the appellants' motion consistent with the reasoning of this opinion.
REVERSED and REMANDED with directions.
SHARP, W. and GRIFFIN, JJ., concur.