WOLF, J.
Appellant, Heron at Destín West Beach and Bay Resort Condominium Association, Inc. (Heron), challenges a final summary judgment that found the election of officers of a master condominium association must be based on a simple majority of the board of directors rather than the weighted voting procedure specified in the master condominium declaration. We determine that chapter 718, Florida Statutes, applies to this master condominium association, that the governing documents of the association intended that results of elections be determined based on the weighted voting procedure, and that nothing in chapter 617, Florida Statutes, precludes this manner of election. We, therefore, reverse the summary judgment granted in *625 favor of the appellees and remand for entry of a summary judgment in favor of appellant.
All parties are members of a Master Association, Destín West Beach and Bay Resort-Bayside, which is comprised of five smaller condominium associations: (1) Osprey at Destín West Beach and Bay Resort (containing 37 condominium units); (2) Sandpiper at Destín West Beach and Bay Resort (48 units); (3) Pelican at Des-tín West Beach and Bay Resort (48 units); (4) Heron at Destín West Beach and Bay Resort (54 units); and (5) Destín West Office Building (4 units). The developer of these resorts controlled the Master Association until November 7, 2009, when control was turned over to the Board of Directors (the Board). The Board was comprised of the presidents of each condominium association, pursuant to the Master Association’s governing documents.
One of the first actions taken by the Board was to call a meeting and elect officers. Two of the five board members were nominated for the office of president: Judith Rawson and James Peters. During voting, a dispute arose over how the votes were to be tallied. Rawson asserted that each board member should be given a weighted vote based on the number of total units in that member’s condominium association. In contrast, Peters asserted that the officers were to be elected by a majority of the Board with one vote allotted to each board member.
After taking a vote, Rawson received two votes, and Peters received three votes. Rawson, however, received a majority of the votes of the individual units under the weighted voting scheme. Based on Raw-son’s interpretation of the voting requirements, she declared herself president; however, Peters and the directors who supported him refused to recognize Raw-son as president based on their interpretation of the requirements.
The parties reached an impasse. Peters and the directors who supported him, ap-pellees, filed a complaint (the Complaint) against Rawson’s association, appellant, seeking declaratory and injunctive relief. Appellees asked the court to rule the election of officers was subject to a one-vote-per-director voting scheme.
Appellees attached to the Complaint the governing documents of the Master Association, including the Master Declaration of Restrictive Covenants and Easements (Master Declaration), the Articles of Incorporation, and the Bylaws. The Master Declaration read in pertinent part:

THE MASTER DECLARATION:

ARTICLE 3

MEMBERSHIP AND VOTING RIGHTS

3.1 Membership. Every Condominium Association in DESTIN WEST BEACH AND BAY RESORT-BAYSIDE (and every Owner of a Unit in DESTIN WEST BEACH AND BAY RESORT-BAYSIDE, but only by virtue of his membership in his respective Condominium Association) and the Developer shall be members of the Master Association. ... The Master Association shall have two classes of membership: (a) Class “A” Members and (b) Class “B” Members, as follows:
(a) Class “A” Class “A” Members shall be all those Condominium Associations created within DESTIN WEST BEACH AND BAY RESORT-BAYSIDE as described in this Declaration.
(b) Class “B” Class “B” Members shall be the Developer. Unless the Developer earlier terminates this membership, the Class “B” Member *626 ship shall terminate upon Turnover of the Association.
3.2 Voting. The voting rights of the two classes of membership are as follows:
(a) Class “A” Class “A” Members shall be entitled to one (1) vote for each Unit (excluding Cabana Units) the Class “A” Member represents in the Master Association.
[[Image here]]
3.4Condominium Association Representative. Each Class A Member shall have the power to vote at Master Association meetings only as described herein. Each Class A Member shall appoint its President or his designee as the representative of the Condominium Association (a “Director”), who shall be a Director of the Master Association and shall attend meetings of the Master Association Board and cast the votes of the Class A Member on Master Association Matters. The Director shall cast the Class A Member’s votes as a block in the manner as the Director may, in his sole and reasonable discretion, deem appropriate, acting on behalf of the Class A Member....
[[Image here]]

ARTICLE 13

[[Image here]]
13.4Interpretation: The provisions of this Declaration shall be liberally construed to effectuate its purpose of creating a uniform plan for the development of DESTIN WEST BEACH AND BAY RESORT-BAYSIDE as a resort community. ...
(Emphasis added).
In addition to the foregoing, the Articles of Incorporation for the Master Association were attached to the Complaint and stated in relevant part:

ARTICLES OF INCORPORATION

[[Image here]]

ARTICLE II

PURPOSES

The Master Association is organized to establish a master association of the condominium associations of DESTIN WEST BEACH AND BAY RESORT-BAYSIDE, and to administer and enforce the Declaration of Restrictive Covenants and Easements for DES-TIN WEST BEACH AND BAY RESORT-BAYSIDE (hereinafter the “Master Declaration”) to be recorded in the Public Records of Okaloosa County, Florida. The Master Association shall have the following specific purposes, including, but not limited to, the following:
[[Image here]]
2.4To enforce the provisions of the Master Declaration which the Master Association has the responsibility to enforce.
[[Image here]]

ARTICLE III

POWERS AND DUTIES

The Master Association shall have and exercise all rights and powers conferred upon corporations under the laws of the State of Florida consistent with these Articles and the Master Declaration. The Master Association shall also have all of the powers and authority reasonably necessary or appropriate to implement its purposes and to carry out duties imposed upon it by the Master Declaration, including, but not limited to, the following:
3.1 To exercise all of the powers and privileges and to perform all of the duties and obligations of the Master Association as defined in the Master Declaration.
*627 [[Image here]]

ARTICLE V

MEMBERSHIP

The members of the Master Association shall be [the Developer or its assignee] and each Condominium Association created within DESTIN WEST BEACH AND BAY RESORT-BAYSIDE as defined in the Master Declaration. Owners of Units in DESTIN WEST BEACH AND BAY RESORT-BAY-SIDE shall be entitled to the benefits of membership in the Condominium Associations which are members of the Master Association; however, such Owners of Units in DESTIN WEST BEACH AND BAY RESORT-BAYSIDE shall not attend meetings or have voting authority in the Master Association except through their respective Condominium Association and as set forth in the Master Declaration and By-Laws. No other persons or entities shall be entitled to membership. Membership rights and duties shall be subject to and controlled by the Master Declaration, which is in the form of a covenant running with the land.

ARTICLE VI

VOTING RIGHTS

6.1The Master Association shall have two (2) classes of voting Memberships: A. Class A Class “A” Members shall be all those Condominium Associations created within DESTIN WEST BEACH AND BAY RESORT-BAYSIDE as described in the Master Declaration. Each Class A Member shall have one (1) vote for each Unit represented by such Class A Member....
[[Image here]]

ARTICLE VII

BOARD OF DIRECTORS

7.1 The affairs of the Master Association will be managed by a Board of Directors....
[[Image here]]
7.6 Directors entitled to cast a majority of the voting interest of the entire membership shall constitute a quorum at meetings of the Board. Except as herein otherwise specified, the decision of a majority of the Directors present at a meeting at which a quorum is present shall be required and shall be sufficient to authorize any action on behalf of the Board. Each Director shall be entitled to vote on every matter presented to the Board of Directors on behalf of the Member represented by such Director, such votes to be cast in accordance with Article VI herein.
(Emphasis added). Last, the Bylaws were attached to the Complaint and they read in pertinent part:

BYLAWS

I. GENERAL

1.1 Master Association.... The Master Association has been organized for the purpose of administering the maintenance, operation and management of the Common Properties and improvements of DESTIN WEST BEACH AND BAY RESORT-BAYSIDE, in accordance with the ... “Master Declaration.”...
1.2 ... The provisions of these ByLaws are ... subject to the provisions of the Master Declaration, and the Articles of Incorporation....

II. MEMBERSHIP

■2.1 Members. The qualification and designation of Members of the Master *628 Association (the “Members”), the manner of their admission and termination of such membership, and voting interests of Members, shall be as set forth in the Articles, the provisions of which are incorporated herein by reference.
2.2 Votes. Each Class A Member shall have one (1) vote for each Unit (excluding Cabana Units if any) represented by such Member. All votes cast by any Member shall be weighted and be with reference to the Units represented by such Member.
2.3 Meetings. Meetings of the Members of the Master Association Shall be held only in the form of meetings of the Board of Directors of the Master Association. Votes of the Members shall be cast by the respective Director on the Board of Directors representing the individual Members, as set forth in the Master Declaration.
(Emphasis added).
On November 29, 2011, Heron filed a motion for summary judgment alleging there were no factual disputes and, as a matter of law, the relevant covenants and articles established Rawson had been lawfully voted president of the Master Association. Appellees filed a motion for summary judgment agreeing there existed no factual disputes, but asserting, as a matter of law, that officers of the Master Association were elected by an affirmative vote of a majority of directors without consideration of the number of units at each of the director’s relevant condominiums.
On June 11, 2011, the trial court held a hearing on the motions. In addition to relying on the plain language of the governing documents, Heron further asserted that section 718.112(2)(b)(l), Florida Statutes (2009), expressly allowed weighted voting in the election of officers of condominium associations. In response, appel-lees asserted that chapter 718 did not control. Rather, they asserted chapter 617, which pertained to non-profit organizations, controlled and prohibited weighted voting.
The trial court determined that chapter 617 addressing non-profit corporations precluded the weighted voting procedure, and the documents contemplated that a simple majority of the directors would elect their officers. We disagree with the trial court on both of these determinations.
Both parties concede there are no factual disputes, and review of the summary judgment order rests on this court’s legal conclusions. Matters of contract and statutory interpretation are reviewed de novo. Speegle Constr., Co., Inc. v. Dist. Bd. of Trs. of Nw. Fla. State Coll., 75 So.3d 360, 361 (Fla. 1st DCA 2011).

Intent of the Documents

As a threshold matter, it is important to note that there exists a distinction between a single condominium association and a master condominium association. Condominium associations derive their authority from a declaration of condominium and are unquestionably controlled by chapter 718, Florida Statutes, the Condominium Act. Master condominium associations typically derive their authority from a declaration of covenants and are controlled by chapter 718, Florida Statutes, only if the master association meets the definition of “association” found in section 718.103(2), Florida Statutes. Otherwise, the master association is only subject to chapter 617, Florida Statutes, the Non-Profit Corporation Act.
Regardless, there exists a certain hierarchy in the governing documents. For both types of associations, the declaration acts as the association’s constitution and strictly governs the relationships among the members and the association. See 10 Fla. Jur. 2d Condominiums, Etc. § 3 (2012). A member, whether a unit *629 owner or another association, may sue the association for violating duties established in the relevant declaration. Id.
The articles of incorporation are governing documents which are generally filed with the Secretary of State as part of the process to form a corporation. Black’s Law Dictionary 120 (8th ed. 2004). Bylaws are rules adopted by an organization for its internal governance; however, these rules are subordinate to the Articles of Incorporation or the organization’s constitution. Id. at 214.
Based on the foregoing, if a conflict arises between these three governing documents, the Master Declaration should control over the Articles of Incorporation or the Bylaws. Appellees have cited Whitley v. Royal Trails Property Owners’ Ass’n, Inc., 910 So.2d 381, 384 (Fla. 5th DCA 2005), for their contention that the governing documents should be read as a whole without one document controlling. However, in Whitley, there was no discussion of whether the governing documents themselves contemplated a hierarchy. Here, the governing documents themselves state the Articles of Incorporation are created to “enforce” the Master Declaration, and the Bylaws are formed to implement the Articles of Incorporation and the Master Declaration. Thus, the governing documents themselves render the Declaration controlling, and Whitley is distinguishable.
Here, the Articles of Incorporation state that all unit owners are entitled to the benefits of membership of the Condominium Associations which are members of the Master Association through an elected representative (their condominium association’s president), who serves as a director on the Master Association’s Board of Directors. The representative then gets one vote per unit to cast as he or she sees fit in any voting processes. Specifically, the Master Declaration provides that, “Class ‘A’ Members shall be entitled to one (1) vote for each Unit (excluding Cabana Units) the Class ‘A’ Member represents in the Master Association.” (Emphasis added).
Appellees argue that section 7.6 of the Articles of Incorporation conflicts.with this foregoing provision by stating:
7.6 Directors entitled to cast a majority of the voting interest of the entire membership shall constitute a quorum at meetings of the Board. Except as herein otherwise specified, the decision of a majority of the Directors present at a meeting at which a quorum is present shall be required and shall be sufficient to authorize any action on behalf of the Board.
(Emphasis added). However, immediately following this provision, the Articles state, “Each Director shall be entitled to vote on every matter presented to the Board of Directors on behalf of the Member[s] represented by such Director, such votes to be cast in accordance with Article VI herein.” In addition, the Bylaws expressly state that “[a]ll votes cast by any Member shall be weighted and be with reference to the Units represented by such Member” (the weighted vote scheme).
Appellees also assert that the weighted voting scheme only applies to “membership matters.” There is little support in the documents for this interpretation. Nowhere in the documents is there a clear demarcation of what would constitute “membership matters” versus “board matters.” Pertinent to this case, there is no mention in the documents that the election of officers is a “board matter.”

The Weighted Voting Scheme Does Not Conflict with Florida Law

In raising their respective arguments, the parties dispute whether section 718.112(2)(b)(l), Florida Statutes of the Condominium Act or section 617.0824(3), Florida Statutes of the Non-Profit Corpo *630 rations Act should control the outcome.of the underlying appeal.
Section 718.112(2)(b)(l), Florida Statutes (2009) states:
(b) Quorum; voting requirements; proxies.—
1. Unless a lower number is provided in the bylaws, the percentage of voting interests required to constitute a quorum at a meeting of the members shall be a majority of the voting interests. Unless otherwise provided in this chapter or in the declaration, articles of incorporation, or bylaws, and except as provided in subparagraph (d)3., decisions shall be made by owners of a majority of the voting interests represented at a meeting at which a quorum is present.
(Emphasis added). Section 617.0824, Florida Statutes (2009) states:
(1) Unless the articles of incorporation or the bylaws require a different number, a quorum of a board of directors consists of a majority of the number of directors prescribed by the articles of incorporation or the bylaws. Directors younger than 18 years of age may not be counted toward a quorum.
(2) The articles of incorporation may authorize a quorum of a board of directors to consist of less than a majority but no fewer than one-third of the prescribed number of directors determined under the articles of incorporation or the bylaws.
(3) If a quorum is present when a vote is taken, the affirmative vote of a majority of directors present is the act of the board of directors unless the articles of incorporation or the bylaws require the vote of a greater number of directors.
If section 617.0824 governing non-profit organizations controls, the statute requires that a majority. of directors present will control decisions of the Board. However, if section 718.112 governing condominium associations controls, the weighted voting scheme is not contrary to law.
Section 718.103(2), Florida Statutes (2009), defines “association” to mean:
in addition to those entities responsible for the operation of common elements owned in undivided shares by unit owners, any entity which operates or maintains other real property in which condominium unit owners have use rights, where unit owner membership in the entity is composed exclusively of condominium unit owners or their elected or appointed representatives, and where membership in the entity is a required condition of unit ownership.
A master condominium association will meet this definition * if it is primarily responsible for the operation of real property or facilities that are not common elements of an individual condominium or property of a condominium association and:
• condominium unit owners have user rights in the master association’s property;
• voting membership is exclusively condominium unit owners (or their agents or representatives);
• membership either directly by a condominium unit owner directly or indirectly through an agent or representative is a required condition of unit ownership; and
• the master association is authorized to assess its members or affected owners for the payment of shared expenses, and any unpaid assessment may ultimately *631 become a lien on a condominium parcel or on common elements of a condominium.
See Karen Stedronsky, Planning and Structuring of Real Estate Developments Incorporating Condominiums and Associations, in Florida Condominium Law and Practice, ch. 2, § 2.25 (Fla. Bar, ed., 2008); Fla. House of Reps. Comm, on Real Property and Probate, Master Condominiums Associations (Dec. 1999).
Appellees misunderstand Heron’s argument that the Master Association meets the definition of “association” under chapter 718. Instead, appellees claim that the Master Association does not meet the definition of a “multicondominium.” § 718.103(20), Fla. Stat. Appellees are correct that the Master Association is not a multicondominium but fail to refute Heron’s argument that the Master Association otherwise meets the definition of “association.”
We conclude that, given the structure of this Master Association, the definition of “association” is met and chapter 718 applies.
Further, we find chapter 718 contemplates allowing various voting schemes to be laid out in the condominium documents, and chapter 617 does not preclude the master declaration of condominiums from addressing the issue.
First, the Condominium Act expressly says it controls. “The powers and duties of the association include those set forth in this section and, except as expressly limited or restricted in this Chapter [Chapter 718], those set forth in the declaration and bylaws and chapters 607 and 617, as applicable.” § 718.111(2), Fla. Stat. (2009). Thus, chapter 718 specifically contemplates some limited application of chapter 617, but chapter 617 does not apply to the extent it conflicts with chapter 718. The two chapters conflict on this issue, so chapter 718 controls.
Second, common law rules of statutory interpretation confirm that the more specific statutory provision controls over the more general. “[A] specific statute covering a particular subject area always controls over a statute covering the same and other subjects in more general terms. The more specific statute is considered to be an exception to the general terms of the more comprehensive statute.” McKendry v. State, 641 So.2d 45, 46 (Fla.1994) (internal citations omitted). The Master Association before this court falls within the broad category of not-for-profit entities, but is more specifically a not-for-profit condominium association subject to chapter 718, Florida Statutes.
Based on the foregoing and the clear intention in the Master Declaration that the voting scheme allow each director to cast the same number of votes as units in his or her respective condominium, we reverse and remand for entry of a summary judgment in favor of appellant.
REVERSED AND REMANDED.
RAY and MAKAR, JJ., concur.

 Whether a master association is controlled by chapter 718 is an admittedly confusing area of law. Attempts to bring statutory clarity to the issue have been somewhat unsuccessful to date. See generally Fla. House of Reps. Comm, on Real Property and Probate, Master Condominiums Associations (Dec. 1999).