DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**MICHAEL ANTHONY COMPANY, MICHAEL PAOLERCIO, ANTHONY PAOLERCIO** and **HUGO LIBERTI,**
Appellants,

v.

**PALM SPRINGS TOWNHOMES,**
Appellee.

No. 4D13-4202

[July 8, 2015]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Catherine M. Brunson, Judge; L.T. Case No. 502007 CA016283XXXXMB.

Jack J. Aiello of Gunster Yoakley & Stewart, P.A., West Palm Beach, for appellants.

Elliot B. Kula and W. Aaron Daniel of Kula & Associates, P.A., North Miami; Jared A. Levy of Dimond, Kaplan & Rothstein, P.A., West Palm Beach; and David A. Rothstein of Dimond, Kaplan & Rothstein, P.A., Miami; for appellee.

PER CURIAM.

Appellants appeal a final judgment in favor of appellee on claims for breach of contract and indemnity, arising from a commercial leaseback of real property that was also the subject of a purchase and sale agreement between the parties. Because we find the trial court erred in its interpretation of the leaseback, we reverse and remand.

On September 30, 2005, Michael Anthony Company[1] entered into a Purchase and Sale Agreement ("PSA") with Coscan Palm Springs, LLC, successor to Palm Springs Townhomes, LLC ("Palm Springs"), buyer/appellee, for the sale and purchase of 14.6 acres of land in West

---

[1] Michael Anthony Company was a general partnership, comprised of partners Michael Paolercio, Anthony Paolercio, and Hugo Liberti. The partnership and its partners are collectively referred to as "Michael Anthony" or appellants.

Palm Beach that housed a flea market, parking area, and a billboard. Palm Springs intended to build townhomes on the property. The PSA provided that the parties would enter into a Commercial Lease after the closing, where Palm Springs would leaseback the property to Michael Anthony, which could then sublet as provided for in the lease. An unexecuted draft of the Commercial Lease was attached to the PSA.

The billboard was the subject of a lease (the "Billboard Lease") between AK Media Group, Inc., predecessor to Clear Channel Outdoor, Inc. (the "Billboard Tenant") and Michael Anthony, executed on November 24, 1998 and terminable only by the Billboard Tenant. The rent was $6,000.00 per year for a five-year term beginning January 13, 1999, followed by "subsequent successive like terms," not to exceed twenty years. Thus, on January 13, 2004, the Billboard Lease automatically renewed for another five-year term through January 12, 2009.

From November 2005 to March 2006, the parties executed four amendments to the PSA. The First Amendment required Michael Anthony to deliver Palm Springs "a true, accurate and complete copy" of the Billboard Lease and guarantee that there were "no amendments or modifications thereto." The First Amendment provides the "Billboard Lease shall be a month to month lease and may be terminated by the lessor thereunder upon thirty (30) days prior written notice to the billboard lessee or is terminated by the Seller prior to the date of the Closing." Additionally, Michael Anthony agreed either to cause the Billboard Tenant to demolish and remove the billboard prior to closing or to share equally with Palm Springs in "the actual cost of the demolition and removal of the billboard (50%-50%)," with a credit for the sale of the scrap metal of the structure. The Fourth Amendment set the closing for May 22, 2006, and "acknowledge[d] that all other conditions for such Closing having been previously satisfied."

On the day of the closing, the parties executed the Commercial Lease. The Commercial Lease required Michael Anthony, as tenant, to pay Palm Springs, as landlord, $10,000 monthly rent. The "Permitted Purpose" of the Commercial Lease was described as "Flea Market and related uses with month to month subleases," with a "Permitted Trade Name" of "Dr. Fleas or similar name." Michael Anthony was entitled to sublet, provided that subleases were "in writing, for a month-to-month term," copies of which were to be promptly delivered to Palm Springs. Section 3.1 provided:

> [S]hould the Tenant fail to timely surrender exclusive possession of the Land to Landlord, including specifically any and all subtenants thereon, within ninety (90) days after

2

delivery of the notice of termination, the Tenant shall be deemed to be a "hold-over" and the parties agree that the monthly rent, or any prorated portion of a month for which a hold over is taking place, shall be based on a rental charge equal to the sum of Fifty Six Thousand Six Hundred and Four and 00/100 Dollars ($56,604.00) per month (the "Hold Over Payment"), together with all applicable Florida sales tax thereon.

Section 3.1 also provided that Michael Anthony agreed to indemnify Palm Springs against any actual loss resulting from a hold over. Section 15 contained a "merger" clause, providing that "[t]his Lease constitutes the entire agreement between the parties," and "shall not be amended or modified except in writing signed by both parties." Lastly, Section 40, entitled "Flea Market Subtenants," required Michael Anthony to cause the "Flea Market Occupants" to "acknowledge and agree in writing that their rights to occupy the premises are as subtenants only" on a "month to month basis." Significantly, the Commercial Lease did not explicitly mention the billboard, the Billboard Lease, or the Billboard Tenant.

On January 9, 2007, Michael Anthony filed an action for eviction against the Billboard Tenant, alleging non-payment of rent, based on the tenant's failure to pay the CPI increased rent amount for the years for which Michael Anthony had already accepted payments. The Billboard Tenant filed an answer, raising numerous affirmative defenses, adding Palm Springs as a defendant, and alleging counterclaims against Michael Anthony and Palm Springs. Palm Springs answered, seeking declaratory judgment and ejectment against the Billboard Tenant, and raising claims for breach of the contract and indemnity against appellants.

During the litigation, the Commercial Lease terminated on March 23, 2007. Although all the flea market occupants were timely removed, the billboard remained on the property. Michael Anthony refused to pay the Hold Over Rent as demanded by Palm Springs pursuant to Section 3.1.

On December 19, 2007, the trial court entered final judgment[2] against Michael Anthony and Palm Springs and in favor of the Billboard Tenant, on the eviction and ejectment claims. The claims between Michael Anthony and Palm Springs remained, and the litigation continued, culminating in a non-jury trial in February 2013. The court heard

---

[2] This court per curiam affirmed the final judgment in favor of the Billboard Tenant. *See Palm Springs Town Homes LLC v. Clear Channel Outdoor Media of S. Fla., Inc.*, 993 So. 2d 535 (Fla. 4th DCA 2008).

testimony from multiple representatives of Michael Anthony and Palm Springs regarding the drafting and execution of the contracts as well as their "understanding" and "interpretation" of the provisions therein.

The trial court entered final judgment in favor of Palm Springs. The court found that Michael Anthony represented to Palm Springs that "notwithstanding the language in the Billboard Lease, they believed the Billboard Lease was terminable by the Property's owner on a month-to-month basis and that the Billboard could be removed." Based on this, the trial court found that Palm Springs proceeded to the closing based on Section 3.1 of the Commercial Lease which provided that Michael Anthony would be "in breach and obligated to pay liquidated damages" should it fail to "timely surrender exclusive possession of the Land to [Palm Springs], including specifically any and all sub-tenants thereon" at the end of the Commercial Lease. Based on these facts, the trial court "concluded that [Michael Anthony] breached the Commercial Lease by failing to provide exclusive possession of the Land at the end of the Commercial Lease as the Billboard was not removed." Thus, the court awarded Palm Springs "liquidated damages" in the amount of $2,038,909.38.

"The interpretation or construction of a contract that is clear and unambiguous is a matter of law that is reviewed *de novo.*" *Lipton v. First Union Nat'l Bank*, 944 So. 2d 1256, 1258 (Fla. 4th DCA 2007) (citation omitted). "With respect to the factual findings, '[a]s an appellate court, it is not our function to reweigh the evidence but, rather, to view the record to determine if it contains competent and substantial evidence to support the conclusions of the trier of fact.'" *Id.* (citation omitted). "Upon appellate review, the findings of the trial court are presumed correct." *Id.* (citation omitted). However, this court "is not restricted in its review powers from reaching a construction contrary to that of the trial court." *Khosrow Maleki, P.A. v. M.A. Hajianpour, M.D., P.A.*, 771 So. 2d 628, 631 (Fla. 4th DCA 2000).

"The parties' intention governs contract construction and interpretation; the best evidence of intent is the contract's plain language." *Whitley v. Royal Trails Prop. Owners' Ass'n*, 910 So. 2d 381, 383 (Fla. 5th DCA 2005). "Where contracts are clear and unambiguous, they should be construed as written, and the court can give them no other meaning. In construing a contract, the legal effect of its provisions should be determined from the words of the entire contract." *Khosrow*, 771 So. 2d at 631 (citation omitted). Likewise, "[a] court may not change the terms of a contract to achieve what it might think is a more appropriate result, or to relieve one side from an improvident bargain." *Rosenstein v. Rosenstein*, 976 So. 2d 1148, 1149 (Fla. 4th DCA 2008) (citation omitted).

4

Furthermore, "[w]hen two or more documents are executed by the same parties at or near the same time, in the course of the same transaction, and concern the same subject matter, they will be read and construed together." *Whitley*, 910 So. 2d at 383. Additionally, "[t]he court should reach a contract interpretation consistent with reason, probability, and the practical aspect of the transaction between the parties." *Id.*

Here, because the Commercial Lease, the PSA, and the PSA Amendments were "executed by the same parties at or near the same time, in the course of the same transaction, and concern the same subject matter," Michael Anthony is correct in arguing that the trial court should have "read and construed [them] together." *Whitley*, 910 So. 2d at 383. Doing so leads to the conclusion that the Commercial Lease did not impose any obligation upon Michael Anthony to remove the Billboard Tenant. Rather, the First Amendment to the PSA imposed that requirement. And as previously found by the trial court and affirmed by this court, Palm Springs waived that requirement when it proceeded to closing while knowing that the billboard remained on the property.

Even if Palm Springs were correct in its assertion that the merger clause of the Commercial Lease precluded any consideration of the PSA and Amendments, the lease as a whole does not support the trial court's conclusion. The permitted purpose and trade name provisions, as well as Section 40, all demonstrate that the Commercial Lease governed Michael Anthony's ability to sublet to the flea market and its occupants. Significantly, no provision in the Commercial Lease, including Section 3.1, provides any indication that the lease governed Michael Anthony's relationship with the Billboard Tenant. Thus, viewing "the words of the entire contract," the Commercial Lease does not impose any requirement for Michael Anthony to remove the billboard. *Khosrow*, 771 So. 2d at 631. The trial court did not have the ability to "change the terms of a contract to achieve what it might think is a more appropriate result" by imposing such a requirement. *Rosenstein*, 976 So. 2d at 1149.

Finally, contrary to Palm Springs's position at oral argument, none of the trial testimony provides evidence that the parties intended Section 3.1 of the Commercial Lease to govern removal of the billboard. The testimony of Michael Anthony partners, as well as Palm Springs's owner/manager Albert Piazza and Palm Springs's attorney, Elaine Cohen, revealed that the parties "never discussed" whether or not the "exclusive possession" provision of Section 3.1 of the Commercial Lease applied to the Billboard Tenant. Likewise, Cohen could not recall any discussion regarding whether the "any and all subtenants thereon" language of Section 3.1 referred to only the flea market subtenants or also to the Billboard Tenant.

Cohen's and Piazza's testimony does demonstrate that the parties contemplated and discussed removal of the billboard. However, Cohen's testimony makes clear that those discussions resulted in her negotiating and drafting the First Amendment to the PSA, not the Commercial Lease. Nevertheless, both Cohen and Piazza testified that they believed that Section 3.1 required Michael Anthony to remove the billboard in order to satisfy the "exclusive possession" provision. However, their testimony does not demonstrate that their "understandings" or "interpretations" were based upon an explicit agreement with Michael Anthony's counsel or representatives. In fact, Piazza testified that he was *not* "relying specifically on representations" by appellants or their counsel.

Conversely, the testimony of the Michael Anthony partners demonstrates their understanding and interpretation of the Commercial Lease was that it applied only to the "flea market building" and not the billboard. They also both testified that they initiated the eviction action against the Billboard Tenant "at the request" of and "to help" Palm Springs, because it seemed like "the right thing to do" given that the First Amendment to the PSA explicitly addressed the billboard and imposed upon them "an obligation to pay for some portion of the removal."

In summary, viewing the language of the entire Commercial Lease does not support the trial court's finding that Section 3.1 required Michael Anthony to remove the Billboard Tenant prior to the Commercial Lease's expiration. Thus, we find that the trial court erred in its interpretation of the Commercial Lease, and we reverse and remand for further proceedings consistent with this opinion.

*Reversed and remanded.*

WARNER, LEVINE and CONNER, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***

6