# SIXTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

———————————————————

Case No. 6D23-644
Lower Tribunal No. 19-CA-1173

———————————————————

PIAL HOLDINGS, LTD,

Appellant,

v.

RIVERFRONT PLAZA, LLC f/k/a THE MACFARLANE GROUP II, LLC,
ODED T. MELTZER, SERVICE FIRST MANAGEMENT GROUP I, INC., M2 LEASING
FUNDS, LLC, and MYY BUILDERS, INC.,

Appellees.

———————————————————

Appeal from the Circuit Court for Lee County.
Joseph C. Fuller & Keith R. Kyle, Judges.

January 26, 2024

TRAVER, C.J.

Pial Holdings, LTD ("Lender") appeals the trial court's final summary judgment for Oded T. Meltzer and Service First Management Group, Inc. ("Service First").[1] Lender argues that the trial court erred when it found as a matter of law that Meltzer and Service First did not personally guarantee Lender's restructured $10

———

[1] This case was transferred from the Second District Court of Appeal to this Court on January 1, 2023.

million loan to MacFarlane Group II, now known as Riverfront Plaza, LLC ("Borrower"). Finding that at minimum, genuine issues of material fact preclude summary judgment on this issue, we reverse.[2]

This dispute stems from a years-long effort by Meltzer and his former business partner, Robert McFarlane, to build a two-phase senior living development project in downtown Fort Myers. Relevant here is the second phase, which Borrower ultimately owned and on which Lender ultimately foreclosed. Borrower's managing member was TMOG Holdings II, LLC ("TMOG II"). In turn, TMOG II originally had two managing members: Metivier Holdings, LLC ("Metivier") and O&T Fort Myers, LLC ("O&T"). MacFarlane was Metivier's managing member, and Meltzer was O&T's.

Lender acquired Borrower's original loan, which MacFarlane and Meltzer personally guaranteed, via assignment. Later, a dispute arose between MacFarlane and other TMOG II members about the project. The resulting settlement saw MacFarlane agree to transfer his and Metivier's interests in TMOG II back to TMOG II in exchange for a release of his personal guarantee on the second phase's original loan.

---

[2] Lender raises one other appellate issue, which we affirm without further discussion.

The parties agree that Borrower, Lender, Meltzer, and Service First restructured the original loan, and that Lender released MacFarlane from his personal guarantee. They also concur that the amended note and mortgage identify Borrower as the restructured loan's borrower and mortgagor. They dispute, though, whether Meltzer and Service First guaranteed the restructured loan. At issue is a two-paragraph document entitled "Guarantee." The first paragraph says that the "undersigned, called Guarantors," agreed unconditionally to guarantee the loan jointly, severally, and personally:

> The undersigned, called Guarantors, jointly and severally, unconditionally and personally guarantee and promise to pay PIAL HOLDINGS LTD, a British Virgin Island Company, Number 1938322 ("Lender") or its assigns, the full indebtedness described in the following: (i) [the mortgage and amendments], (ii) [the note and amendments], and (iii) [the loan agreement as assigned and amended] (Collectively, the "Security Instruments") and any amendments to the Security Instruments. Upon a default by Borrower under any of the Security Instruments, the Guarantors shall be jointly and severally liable to assume the obligations of the Borrower under the repayment terms set forth in the Security Instruments.

The second paragraph explained that the "Guarantor['s]" obligations under the Guarantee were continuing, irrevocable, and independent of any right or remedy against Borrower:

> This Guarantee is absolute and unconditional and is not subject to any conditions. Guarantor is fully liable to perform all of the Borrower's duties and obligations under Security Instruments as of the date of execution of this

3

Guarantee. This Guarantee is a continuing guarantee and applies to all future guaranteed obligations. This Guarantee is a guarantee of payment and not collection. The obligations and liabilities of Guarantor under this Guarantee shall not be conditioned or contingent upon the pursuit of Lender or any right or remedy against Borrower or against any assets securing the payment described in the Security Instruments or right of setoff with respect to such obligations. This guarantee is irrevocable and as such cannot be cancelled, terminated, or revoked by Guarantors.

Meltzer signed the Guarantee twice, under "Borrower" and under Service First:

Executed on ~~November~~ December 5, 2017.

BORROWER:

_____
Oded T. Meltzer, Personally

SERVICE FIRST MANAGEMENT GROUP I, INC., a Florida Profit Corporation

By: _____
Oded Meltzer, Director

The Guarantee does not define "Borrower" or "Guarantors." Borrower ultimately defaulted on the restructured loan and conceded below that Lender could foreclose. Lender also sued Meltzer and Service First for breach of the Guarantee. Meltzer and Service First moved for summary judgment, contending Lender could not enforce the Guarantee against them. Lender did not cross-move for summary judgment; it argued that genuine issues of material fact precluded summary

4

judgment in Meltzer's and Service First's favor. The trial court entered summary judgment, finding the Guarantee did not impose personal liability on Meltzer and Service First as a matter of law.

We review de novo the trial court's order granting summary judgment. *See Volusia Cnty. v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000). The trial court should enter summary judgment only if no genuine dispute of material fact exists, and the moving party is entitled to judgment as a matter of law. Fla. R. Civ. P. 1.510(a). The moving party bears the initial burden of production to show the lack of a genuine dispute, and the nonmoving party must respond with evidence showing that a reasonable jury could find in its favor. *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). The trial court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *See Newcomb v. Spring Creek Cooler Inc.*, 926 F.3d 709, 713 (11th Cir. 2019). The moving party carries its burden when it shows "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must then point to evidence in the record demonstrating the existence of a genuine issue. *Id*. at 324.

We also review the trial court's interpretation of the Guarantee, like all contracts, de novo. *See Nabbie v. Orlando Outlet Owner, LLC*, 237 So. 3d 463, 466 (Fla. 5th DCA 2018) (citing *Jackson v. Shakespeare Found., Inc.*, 108 So. 3d 587,

593 (Fla. 2013)). In construing a contract's terms, we must review the entire instrument as a whole and according to its plain language. *E.g.*, *Talbott v. First Bank Fla., FSB*, 59 So. 3d 243, 245 (Fla. 4th DCA 2011). When parties execute two or more documents at or near the same time and throughout the same transaction, we will read and construe those documents together as a single contract. *See Whitley v. Royal Trails Prop. Owners' Ass'n*, 910 So. 2d 381, 383 (Fla. 5th DCA 2005) (citing *Courtesy Auto Grp., Inc. v. Garcia*, 778 So. 2d 1000, 1002 (Fla. 5th DCA 2000)).

Where a contract's terms are clear and unambiguous, we must glean the parties' intent from the four corners of the document. *See Crawford v. Barker*, 64 So. 3d 1246, 1255 (Fla. 2011). Ambiguity exists only when contractual language "is susceptible to more than one reasonable interpretation." *Penzer v. Transp. Ins.*, 29 So. 3d 1000, 1005 (Fla. 2010). But "[a] true ambiguity does not exist [in a contract] merely because [the] contract can possibly be interpreted in more than one manner." *Am. Med. Int'l, Inc. v. Scheller*, 462 So. 2d 1, 7 (Fla. 4th DCA 1984). Therefore, where one interpretation of a contract would be absurd and another would be consistent with reason and probability, we will interpret the contract in the rational manner. *Vyfvinkel v. Vyfvinkel*, 135 So. 3d 384, 386 (Fla. 5th DCA 2014).

Based on this record before us, the Guarantee is ambiguous. "A guaranty is a promise to pay the debt of another on the default of the person primarily liable for payment or performance." *Fort Plantation Invs., LLC v. Ironstone Bank*, 85 So. 3d

1169, 1171 (Fla. 5th DCA 2012).  It must be in writing, and the guarantor must sign it.  § 725.01, Fla. Stat. (2017).  The "writing" must contain "language indicating that it was intended to be a personal guarantee under Florida law."  *Schmidt v. Sabow*, 331 So. 3d 781, 788 (Fla. 2d DCA 2021).

Although the document at issue is called a "Guarantee," it does not define "Guarantors" or "Borrower," the latter of which appears over Meltzer's and Service First's signatures.  But no magic words are required to create a guaranty; instead, we look to the substance of an agreement to determine whether it constitutes a guaranty.  *See e.g.*, *Robert C. Malt & Co. v. Carpet World Distribs., Inc.*, 763 So. 2d 508, 510–11 (Fla. 4th DCA 2000) (interpreting corporate officer's conditional promise to pay corporation's debts as personal guaranty despite that promise's inclusion in lease addendum).

Meltzer and Service First were not "borrowers" of the restructured loan; only Borrower was.  Corporations and persons cannot guarantee their own debts, and therefore, we will not construe as guaranties documents signed on behalf of the corporation already involved because to do so would render the guaranty a nullity and meaningless.  *See, e.g.*, *Tampa Bay Econ. Dev. Corp. v. Edman*, 598 So. 2d 172, 174 (Fla. 2d DCA 1992) ("For a corporation to guarantee its own debt would add nothing to its existing obligation and would be meaningless.").  Meltzer and Service First do not contest this principle, but they contend Service First became the

7

successor mortgagor to Borrower in the restructured loan. They also claim that Meltzer signed the Guarantee on Borrower's behalf, even though "Personally" appears after his name on the signature block. Lender disputes both contentions. It argues that nothing in the restructured loan transaction would allow Borrower to transfer its obligation to Service First. It also suggests that the word "Personally," alongside the Guarantee's references to joint and several personal liability, describes a personal guarantee. It does not explain, however, why "Borrower" appeared above Meltzer's and Service First's signatures.

While we make no suggestion of what should occur on remand, we find that based on this record, there are—at minimum—genuine issues of material fact precluding summary judgment in Meltzer's and Service First's favor on the Guarantee. We therefore reverse for further proceedings.

AFFIRMED in part; REVERSED in part; and REMANDED for further proceedings.

MIZE and BROWNLEE, JJ., concur.


Alexander Brockmeyer, of Boyle, Leonard & Anderson, P.A., Fort Myers, for Appellant.

Robert A. Stok and Theodore Sandler, of Stok Kon + Braverman, Fort Lauderdale, for Appellees, Oded T. Meltzer and Service First Management Group I, Inc.

No Appearance for Appellees, Riverfront Plaza, LLC f/k/a The MacFarlane Group II, LLC, m2 Leasing Funds, LLC, and MYY Builders, Inc.


NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING AND DISPOSITION THEREOF IF TIMELY FILED