DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**HOWARD P. MILSTEIN, ANDREW W. O'BRIEN,** and
**NICKLAUS COMPANIES, LLC,**
Appellants,

v.

**JACK W. NICKLAUS,**
Appellee.

No. 4D2024-3188

[June 4, 2025]

Appeal of nonfinal order from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Reid P. Scott, Judge; L.T. Case No. 502023CA009653.

Francesca M. Stein and Scott A. Cole of Cole, Scott, & Kissane, P.A., Miami, Gary J. Malone of Constantine Cannon LLP, New York, New York, and Janice Johnson of Constantine Cannon LLP, Washington, D.C., for appellants.

Eugene E. Stearns, Matthew W. Buttrick, Cecelia D. Simmons, and Albert D. Lichy of Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., Miami, for appellee.

LEVINE, J.

Jack Nicklaus, appellee, filed an amended complaint for defamation against appellant Nicklaus Companies, LLC (the "Company"), and two of its officers, appellants Howard Milstein and Andrew O'Brien. Appellants moved to stay the proceedings or, in the alternative, dismiss the complaint based on an LLC agreement's forum selection clause, which required that all causes of action between Nicklaus and the Company be brought exclusively in New York. The trial court denied the motion to stay or dismiss. This court previously denied appellants' petition for writ of certiorari contesting the denial of the stay. The instant appeal challenges only the denial of the motion to dismiss based on the forum selection clause. We find that the allegations in Nicklaus's complaint did not "arise from" or "relate to" the LLC agreement, and, thus, the forum selection clause of the LLC agreement is inapplicable. As such, we affirm.

In 2007, Nicklaus sold his golf-related business interests to the Company, a newly formed corporation. Four agreements were contemporaneously entered into: a purchase and sale agreement, an LLC agreement, a noncompetition agreement, and an executive employment agreement. The four contemporaneous agreements each had differing choice of law and forum selection provisions:

- The purchase and sale agreement was governed by New York law and provided for non-exclusive jurisdiction in New York courts.

- The LLC agreement was governed by Delaware law and provided for exclusive jurisdiction in New York.

- The noncompetition agreement was governed by Florida law and provided for non-exclusive jurisdiction in Florida.

- The employment agreement was governed by Florida law and contained provisions for non-binding arbitration in Miami, Florida.

In 2017, Nicklaus gave notice that he would be ending his employment with the Company effective June 1, 2017. The separation triggered the employment agreement's post-employment, five-year restrictive covenant period during which Nicklaus was permitted to provide golf course design or endorsement only through the Company or for charities. After his employment ended, Nicklaus agreed to continue providing golf course design and endorsement services to the Company according to the terms of a separate 2013 employment, governance, and control agreement.

Nicklaus alleged that in 2021, a Company officer asked him to meet with representatives of Golf Saudi for the design of a Jack Nicklaus Signature golf course in Saudi Arabia. Golf Saudi was also developing a new golf league at the time, now known as LIV Golf. Nicklaus learned during the meeting that Golf Saudi wanted him to accept a leadership role with the new league. According to Nicklaus, he had no interest in the offer and declined because he felt the PGA Tour was an important part of his legacy, and if the PGA was not in favor of a new league, he did not want to be involved. He stated that the Company had no part in his decision to reject the offer and that the Company in fact commended him for rejecting this offer.

In May 2022, Nicklaus chose to resign from the Company board and end his professional relationship with the Company. He initiated arbitration proceedings in Florida, under the terms of his employment

agreement, to establish that he would be free to compete with the Company under his name on June 1, 2022, that being the end of his post-employment restrictive covenant period.

Then, within a short period of time, the Company initiated a lawsuit against Nicklaus in New York, raising several claims under the purchase and sale agreement, the LLC agreement, and the noncompetition agreement. The Company's initial complaint included "examples" of purported misconduct, including claims that Nicklaus had "private[ly]" pursued a leadership role with LIV Golf and that the Company had to "interven[e]" to "save[] Mr. Nicklaus from himself." Significantly, the Company later removed those allegations from the complaint.

In 2023, Nicklaus brought this lawsuit for defamation against appellants. Nicklaus's amended complaint alleged the Company knew that the LIV Golf allegations were made with the intention of damaging his public reputation and were demonstrably untrue.

Appellants then filed a motion to stay Nicklaus's lawsuit pending resolution of their then-pending New York case or, in the alternative, to dismiss Nicklaus's complaint. Appellants argued that the LLC agreement's terms mandated that any actions or proceedings between these parties must be brought in New York. Appellants did not argue the forum was inconvenient for the parties or witnesses and relied entirely on the forum selection clause of the LLC agreement in contesting Nicklaus's choice of venue.

In response, Nicklaus argued that appellants misconstrued the forum selection provisions of the LLC agreement, which he claimed applied only to actions "arising out of or relating to" the LLC agreement. He further argued that interpreting the LLC agreement as appellants suggested would essentially nullify the forum selection clauses of the parties' other three contemporaneous agreements. The trial court agreed and denied appellants' motion, resulting in this appeal.

Appellants argue that this defamation action is based upon statements and allegations made in the New York lawsuit and that the LLC agreement mandates that this action be brought in New York. Nicklaus responds that the clause applies only to disputes "arising out of or relating to" the LLC agreement. Nicklaus points out that the other agreements executed contemporaneously in conjunction with the sale have differing forum selection clauses, further indicating that the LLC agreement's forum selection clause was intended to bind the parties for disputes only relating to or arising out of that specific agreement.

Our review is de novo. *R.S.B. Ventures, Inc. v. Berlowitz*, 201 So. 3d 719, 720 (Fla. 4th DCA 2016) ("Because 'an appellate court reviews the interpretation of a contractual forum selection provision as a matter of law,'" a ruling on a motion to dismiss based on such a clause "is reviewed de novo.") (quoting *Am. Boxing & Athletic Ass'n v. Young,* 911 So. 2d 862, 864 (Fla. 2d DCA 2005)).

The pertinent language in the LLC agreement provides as follows:

> Each party hereby irrevocably and unconditionally submits, for itself and its property, to the jurisdiction of the courts of the State of New York, and of the United States District Court of the Southern District of New York, and any appellate court from any thereof, **in any action or proceeding arising out of or relating to this Agreement**, or for recognition or enforcement of any judgment, and each of the parties hereto hereby irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding may be heard and determined in such state or, to the extent permitted by law, in such federal court. Each of the parties hereto agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. Nothing in this Agreement shall affect any right that any party may otherwise have to bring any action or proceeding relating to this Agreement against the other or its properties in the courts of any jurisdiction to enforce any judgment, order or process entered by such courts situated within the State of New York or to enjoin any violations hereof or thereof or for relief ancillary hereto or for any other lawful purpose. **Each party further agrees that any action or proceeding brought against the other, shall be brought only in a court of the State of New York, or to the extent permitted by law, in such federal court.**

(emphasis added).

A mandatory forum selection clause is identified by "exclusive" language and "must be honored by the trial court in the absence of a showing that the clause is unreasonable or unjust." *Michaluk v. Credorax (USA), Inc.*, 164 So. 3d 719, 722-23 (Fla. 3d DCA 2015). We agree that the LLC agreement's forum selection clause is a mandatory forum selection clause and is otherwise enforceable as it relates to disputes arising from

or relating to the LLC agreement. However, we find that the LLC agreement does not apply to Nicklaus's lawsuit alleging defamation.

We do not look to a single portion of the clause, but rather to the entire section and the totality of the contemporaneous agreements. "A key principle of contract interpretation is that 'courts must not read a single term or group of words in isolation.'" *Fla. Invs. Grp. 100, LLC v. Lafont*, 271 So. 3d 1, 4-5 (Fla. 4th DCA 2019). "No word or part of an agreement is to be treated as a redundancy or surplusage if any meaning, reasonable and consistent with other parts, can be given to it." *Id.* at 5. "When two or more documents are executed by the same parties at or near the same time, in the course of the same transaction, and concern the same subject matter, they will be read and construed together." *Michael Anthony Co. v. Palm Springs Townhomes*, 174 So. 3d 428, 432 (Fla. 4th DCA 2015) (quoting *Whitley v. Royal Trails Prop. Owners' Ass'n*, 910 So. 2d 381, 383 (Fla. 5th DCA 2005)).

Appellants' argument that all disputes between the parties are governed by the LLC agreement's forum selection clause ignores the inclusion of the "arising out of or relating to" language in that clause. There would be no reason to have the clear provision requiring that an action "aris[e] out of or relat[e] to" the specific LLC agreement and then subsequently ignore it. Further, if the provision was not read in pari materia with the other part of that clause, it would be read to be meaningless. *See Lafont*, 271 So. 3d at 5. Additionally, appellants' reading of that provision would render the other three contemporaneous agreements to be equally meaningless, all of which have differing forum selection clauses. *See Michael Anthony*, 174 So. 3d at 432.

Appellants' interpretation of the LLC agreement would violate the above principles by construing a single clause from one of the agreements in isolation to conclude that all disputes between the parties, regardless of the facts and circumstances, are subject to the forum selection clause of this single LLC agreement. Such a reading would render the forum selection clauses of the other three agreements meaningless and would also be inconsistent with the parties having already arbitrated a dispute in Miami, Florida, under the terms of the employment agreement.

Alternatively, appellants claim that even if the forum selection clause applies only to actions that arise out of or relate to the LLC agreement, Nicklaus's defamation lawsuit relates to that agreement. Appellants concentrate on the second part of the "arise out of or relate to" clause and argue that the defamation lawsuit "relates to" the LLC agreement. We disagree.

"Not every dispute that arises between contracting parties should be subject to" a forum selection clause. *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 638 (Fla. 1999). Even in contracts containing broad forum selection clauses, whether a particular claim is subject to a forum selection clause "necessarily depends on the existence of some nexus between the dispute and the contract containing the" forum selection clause. *Id.* "[T]he mere fact that the dispute would not have arisen but for the existence of the contract and consequent relationship between the parties is insufficient by itself to transform a dispute into one 'arising out of or relating to' the agreement." *Id.* "[F]or a tort claim to be considered 'arising out of or relating to' an agreement, it must, at a minimum, raise some issue the resolution of which requires reference to or construction of some portion of the contract itself." *Id.*

*Seifert* involved a wrongful death lawsuit against a home builder following the homeowner's death from carbon monoxide after a car was left running in the garage. *Id.* at 635. The builder sought to invoke a provision in the purchase and sales contract which required arbitration of "[a]ny controversy or claim arising under or related to this Agreement." *Id.* The Florida Supreme Court found that, notwithstanding the broad language of the arbitration provision, the wrongful death action did not "arise[] from and bear[] such a significant relationship to the contract between the parties as to mandate application of the arbitration clause." *Id.* at 640. The wrongful death action was "unrelated to the rights and obligations of the contract." *Id.* "Importantly, too, the factual allegations in the complaint [did] not rely on the contract." *Id.* at 641. The Florida Supreme Court concluded: "Even under a broad approach, the dispute does not create a 'significant relationship' to the contract because none of the allegations in the complaint refer to or mention the sales agreement." *Id.* at 642.

Although *Seifert* involved an arbitration provision, the principles set forth in *Seifert* can apply to forum selection clauses. *See Fairbanks Contracting & Remodeling, Inc. v. Hopcroft*, 169 So. 3d 282 (Fla. 4th DCA 2015) (applying principles concerning the scope of an arbitration provision to a forum selection clause). Here, like in *Seifert,* no nexus existed between the defamation claim and the LLC agreement. The contours of the LLC agreement concerned organizational matters; capital, capital accounts, and members; distributions; allocations of net profits and net losses; operations; interests and transfers of interests; and dissolution, liquidation, and termination of the Company as well as buy-out rights. In contrast, the defamation action concerned claims of false statements relating to Nicklaus and the new Saudi golf league. To prove this claim,

6

Nicklaus would need to show publication of a false statement to a third party and that the falsity of the statement caused injury. *NITV, L.L.C. v. Baker*, 61 So. 3d 1249, 1252 (Fla. 4th DCA 2011). The defamation claim, as alleged in the complaint, did not "arise[] from and bear[] such a significant relationship" to the LLC agreement. *Seifert*, 750 So. 2d at 640. Rather, the defamation claim was "unrelated to the rights and obligations of the" LLC agreement. *Id.*

Additionally, the factual allegations in the defamation claim did not rely on the LLC agreement or refer to any provision within that agreement, nor did the defamation claim "raise some issue the resolution of which requires reference to or construction of some portion of the contract itself." *Id.* at 638. Nicklaus's defamation claim merely noted the LLC agreement as one of multiple documents consummating the sale of Nicklaus's business to the Company. The defamation claim related to matters wholly independent from the LLC agreement. *Id.* at 642. Therefore, the particular forum selection clause in this LLC agreement would not apply to Nicklaus's defamation claim. *Id.* at 642-43; *see also Boone v. Etkin*, 771 So. 2d 559, 561 (Fla. 4th DCA 2000) (finding that an employee's sexual harassment claims did not relate to the employment agreement and thus were not subject to the arbitration provisions of that agreement); *Rolls-Royce PLC v. Royal Caribbean Cruises LTD.*, 960 So. 2d 768, 771 (Fla. 3d DCA 2007) (finding that misconduct claims did not "arise out of or relate to" shipbuilding agreements because resolution of the claims did not "require reference to or construction of the shipbuilding agreements").

Appellants' assertion that the resolution of the defamation claim would inevitably require reference to the LLC agreement is based on pure speculation. As in *Seifert*, the fact that the dispute would not have arisen but for the LLC agreement is not enough and thus insufficient.

In summary, we find the trial court did not err in denying appellants' motion to dismiss the complaint based on the LLC agreement's forum selection clause. Thus, we affirm.

*Affirmed.*

DAMOORGIAN and ARTAU, JJ., concur.

\*      \*      \*

***Not final until disposition of timely filed motion for rehearing.***

7