721 So.2d 433 (1998)
INTER-ACTIVE SERVICES, INC., Appellant,
v.
HEATHROW MASTER ASSOCIATION, INC., etc., Appellee.
No. 97-1322
District Court of Appeal of Florida, Fifth District.
December 4, 1998.
*434 C. Thomas Davidson and Linda E. Jorge of McWhirter, Reeves, McGlothlin, Davidson, Rief & Bakas, P.A., Tampa, for Appellant.
David B. King and Mayanne Downs and Thomas A. Zehnder of King, Blackwell & Downs, P.A., Orlando, for Appellee.
JACOBUS, B.W., Associate Judge.
Appellant, Inter-Active Services, Inc., appeals a final judgment entered after a non-jury trial denying Appellant temporary and permanent injunctive relief and declaring the contract, upon which the suit was based, terminable after March 31, 1995.
On October 11, 1989, Appellee, Heathrow Master Association, Inc., entered into a written Installation and Monitoring Services Agreement ("contract") with Intrusystems, Inc. ("Intrusystems"). The contract provided for installation and subsequent monitoring of security systems in existing and future homes in a residential development project consisting of approximately 3,000 units, referred to as "Heathrow." The project was developed by Arvida Corporation and at all pertinent times Appellee was under the control of Arvida Corporation. Prior to signing the contract, Appellee and Intrusystems made several modifications to the original form contract.
The security system installation and monitoring services for Appellee had originally been provided by ADT; Intrusystems replaced ADT. In accordance with the contract's assignability clause, Appellant purchased the contract from Intrusystems in 1990 for $900,000. When Appellant purchased the contract, both ADT and Intrusystems had installed some security systems and had been conducting monitoring. Appellant began installation and monitoring in both new and existing residential units in early 1990. Appellant could not immediately service certain homes because they were still being serviced by ADT. As a result, Appellant agreed to absorb some of the costs of monitoring until April 1, 1990 so that Appellee would not be double-billed by Appellant and ADT. On or about February 24, 1995, Appellee notified Appellant that the contract would terminate on May 1, 1995.
Appellant filed a petition for temporary and permanent injunction in the lower court, and Appellee counterclaimed seeking a declaratory judgment and money damages. At issue at the non-jury trial was the termination date of the contract. The trial judge determined that "the only ambiguity in this contract is ambiguity that appears upon the face of the contract in two places." The trial judge made a factual finding that notwithstanding the date of the execution of the contract on October 11, 1989, the parties amended the contract's commencement date to April 1, 1990 based upon their actions and their agreement. The trial judge further found that the contract terminated five years from April 1, 1990.
While the trial court correctly determined that the contract commenced on April 1, 1990, we disagree with the trial judge's interpretation of the contract's termination date. Interpretation of a contract is a question of law, and an appellate court is not restricted in its review powers from reaching a construction contrary to that of the trial court. Pullam v. Hercules, Inc., 711 So.2d 72, 75 (Fla. 1st DCA 1998) (citing Florida Bd. of Regents v. Mycon Corp., 651 So.2d 149, 153 (Fla. 1st DCA 1995)).
The subject contract provides, in pertinent part:
SECTION II:

*435 TERMS OF AGREEMENT 5 Years (60 Months)
* * * * * *
THIS AGREEMENT IS SUBJECT TO THE GENERAL TERMS AND CONDITIONS ATTACHED HERETO AND MADE A PART HEREOF. ASSOCIATION ACKNOWLEDGE THAT THEY HAVE REVIEWED THE SAID GENERAL TERMS AND CONDITIONS OR HAVE HAD SAME REVIEWED ON THEIR BEHALF, THAT THEY UNDERSTAND SAME, AND AGREE TO BE BOUND BY ALL OF THE PROVISIONS THEREOF.
* * * * * *
GENERAL TERMS AND CONDITIONS
* * * * * *
3. Term; Escalator Clause. Unless earlier terminated as expressly provided for herein, this Agreement will terminate at the end of the Term of this Agreement, which is set forth in Section II. The term of this Agreement, as set forth in section II, shall commence on the Commencement Date applicable to the building or home within the Project which is the last building or home the Project in which the Components are installed and the Monitoring Services are commenced (this Commencement Date shall be hereinafter referred to as the "Last Commencement Date"), and shall be non-cancelable except as specifically provided herein. Beginning with the year that commences with the second anniversary of the Contract Date, all the installation, activation and monthly monitoring fees charged by Intrusystems hereunder will be increased each year by a percentage equal to the percentage increase in the cost of living during the prior year.
Paragraph three of the contract clearly provides that the five-year termination period commences when the last building or home in the project has its components installed and monitoring services are commenced. When a contract's provisions are clear and unambiguous on their face, a court may not violate the clear meaning in order to create an ambiguity. Hoffman v. Robinson, 213 So.2d 267, 268 (Fla. 3d DCA 1968). When possible, courts should give effect to each provision of a written instrument in order to ascertain the true meaning of the instrument. Excelsior Ins. Co. v. Pomona Park Bar & Package Store, 369 So.2d 938, 941 (Fla.1979). Where the contract is susceptible to an interpretation that gives effect to all of its provisions, the court should select that interpretation over an alternative interpretation that relies on negation of some of the contractual provisions. McArthur v. A.A. Green & Co. of Florida, Inc., 637 So.2d 311, 312 (Fla. 3d DCA 1994).
Appellant made a substantial monetary investment in consideration for the exclusive right to install system components and provide monitoring services. At the time that Appellant began providing monitoring services, there were approximately three hundred homes in Appellee's project. However, the parties also estimated at the time the contract was entered into that Appellee would continue to build new homes in accordance with its master plan, which called for 3,000 units to be built in the development that would be subject to the contract. Clearly, there would not be 3,000 units built in five years from April 1, 1990, the termination date as suggested by Appellee. The contract is extended an additional five years from the time the last building or home has components installed and monitoring services are commenced. Contrary to Appellee's assertion, construing the contract in this fashion would not result in the contract being extended to some unknown period of time. If there are no new buildings or construction in a five-year period, then the contract is terminated.
The parties contemplated that the provider of the monitoring service would recoup its investment in the components installed after five years. To interpret the contract as suggested by Appellee would mean that if Appellant installed the components in a building one day before the five-year term expired it would receive payment for monitoring service for one day. Clearly, the intent of the parties was that Appellant was to receive payment for monitoring services for five years from the last installation.
*436 The case is reversed and the cause is remanded for the trial court to enter a permanent injunction in favor of Appellant.
REVERSED and REMANDED.
COBB and W. SHARP, JJ., concur.