984 So.2d 571 (2008)
Terry DAVIS and Debra Hutton, Appellants,
v.
Jay L. IVEY, Appellee.
No. 5D07-536.
District Court of Appeal of Florida, Fifth District.
May 23, 2008.
Rehearing Denied July 2, 2008.
*572 Christopher V. Carlyle and Shannon McLin Carlyle of The Carlyle Appellate Law Firm, The Villages, and Jed Berman of Infantino and Berman, Winter Park, for Appellants.
Joseph A. Frein of Joseph A. Frein, P.A., Orlando, for Appellee.
COHEN, J.
Terry Davis and Debra Hutton appeal the denial of their claim for specific performance relating to the sale of real property owned by Jay Ivey and located in Orange County, Florida. We conclude that the appellants are entitled to specific performance under the clear and unambiguous terms of the contract and reverse.
Terry Davis and Debra Hutton (Buyers) and Jay Ivey (Seller) entered into a contract for the sale and purchase of the property in question. While the contract provided that time was of the essence, the closing date was extended twice and then ultimately set for January 11, 2005.
The pertinent provisions in the contract provided that the Seller would, "prior to Closing Date," provide the Buyers a title insurance commitment from a licensed Florida title insurer showing marketable title to the property. Further, it stated that the Buyers would, within fifteen days from receipt of the evidence of title, deliver written notice to Seller of title defects. The contract also provided that the Buyers could obtain, at their expense, a current certified survey of the property "within the time period allowed to deliver and examine title evidence." Any encroachments revealed by this survey would constitute a title defect. It was not until January 10, 2005, one day prior to the scheduled closing, that the Seller finally provided evidence of title. On the scheduled closing date, the Buyers requested a delay of the closing; however, the Seller was unwilling to do so. That same day, Buyers' counsel advised the Seller that a potential encroachment was discovered on the property and that it would not be appropriate to close until this title defect was resolved. One week later, despite not having obtained a current survey, the Buyers informed Seller in writing that they were satisfied with title and were prepared to close on January 19, 2005, several days before the end of the fifteen-day period allowed for the title review. The Seller never responded to the letter, and no closing occurred. The Buyers filed suit seeking specific performance of the contract.
The trial court's final judgment denied Buyers' action for specific performance. It noted that "the contract requires Seller to deliver to Buyer the title commitment prior to the closing date (i.e., January 11, 2005)" and that "[t]he undisputed evidence established that the title commitment was delivered to Buyer's attorney on January 10, 2005." The trial court accepted the Seller's testimony that he was ready, willing and able to close on January 11. However, it found that the Buyers were not ready, willing and able to close on January 11 because they had failed to timely request a release of funds from an equity account. The judge perceived the letter from the Buyers' attorney relating to the potential encroachment as a tactic to delay closing to allow the Buyers an opportunity to finalize their financing. The record demonstrates, however, that the Buyers had funds available to transact a full cash purchase. The trial court, referring to the encroachment, ruled that there were no title defects that precluded closing on January 11. The court found that the claim of a title defect did not justify an extension because the Buyers failed to comply with *573 their own contractual obligation to obtain a current survey, which would have refuted the existence of an encroachment.
The legal interpretation of the contractual provisions is de novo. Whitley v. Royal Trails Prop. Owners' Ass'n, Inc., 910 So.2d 381, 383 (Fla. 5th DCA 2005). Seller argues, and the lower court agreed, that because the contractual provision providing a time frame for delivering the title insurance commitment was left blank, Seller's obligation under the contract was satisfied when he provided the commitment one day prior to closing. We disagree.
The court must read the provisions of a contract harmoniously in order to give effect to all of its provisions. City of Homestead v. Johnson, 760 So.2d 80, 83 (Fla. 2000). Every provision should be given meaning and effect and apparent inconsistencies reconciled if possible. Excelsior Ins. Co. v. Pomona Park Bar & Package Store, 369 So.2d 938, 941 (Fla.1979). Under the plain terms of the contract the Buyers were allowed fifteen days to examine the evidence of title, in this case, the title insurance commitment. Within that time frame, the Buyers had the option to either accept the evidence of title or give notice of any title defects. The Seller could then either cure the defect, or, if the Seller believed the defect could not be cured, give notice to the Buyers of his inability to cure. The Buyers then had ten days to terminate the contract or accept the title subject to the existing defect.
The fundamental problem with the Seller's interpretation of the contract is that it ignores and renders meaningless the contractual provision allowing a fifteen-day title examination period. It effectively precludes the Buyers from any meaningful opportunity to review the title insurance commitment. It is clear from a reading of the contractual provisions that the Buyers should have been allowed fifteen days after receiving evidence of title to close. Their motivation for exercising this contractual right is immaterial unless the trial court believed their claim for the equitable relief of specific performance was barred because of unclean hands. See Epstein v. Epstein, 915 So.2d 1272, 1275 (Fla. 4th DCA 2005). The court made no such finding, nor would the Buyers' decision to delay the expense of finalizing financing until they completed a title examination constitute unclean hands. See Adrian Developers Corp. v. de la Fuente, 905 So.2d 155, 156 (Fla. 3d DCA 2004) (holding that the buyer was relieved from arranging for financing until the seller complied with its contractual obligations). There is evidence to suggest that the letter from the Buyers' lawyer complaining about a potential encroachment was disingenuous. However, the Buyers effectively withdrew that claim and offered to close within the fifteen-day period after having been provided the title insurance commitment.[1] The contract allowed the Buyers fifteen days to examine the title evidence, and the trial court erred in not giving effect to this provision.
Accordingly, we REVERSE the final judgment and direct the trial court to GRANT specific performance to the appellants.
PALMER, C.J., and SAWAYA, J., concur.
NOTES
[1] The survey issue appears to be a red herring because that provision inured to the benefit of the Buyers who could waive the provision. Am. Ideal Mgmt., Inc. v. Dale Village, Inc., 567 So.2d 497, 501 (Fla. 4th DCA 1990). In any event, under the terms of the contract, they would have been allowed the same fifteen-day period to examine title within which to obtain the survey.