867 So.2d 630 (2004)
PALADYNE CORP., Appellant,
v.
Ronald Lynn WEINDRUCH, Appellee.
Nos. 5D03-1567, 5D03-2011.
District Court of Appeal of Florida, Fifth District.
March 12, 2004.
*631 Steven E. Brust and Roger K. Gannam of Smith, Gambrell & Russell, LLP, Jacksonville, for Appellant.
Patricia R. Sigman of Sigman & Sigman, P.A., Altamonte Springs, and T. Robert Reid of T. Robert Reid, P.C., Atlanta, Georgia, for Appellee.
MONACO, J.
There are a number of maxims that govern the interpretation of contracts. Among these are the rules of construction requiring courts to read provisions of a contract harmoniously in order to give effect to all portions of the contract, and to give effect to every term in the agreement. See, e.g., City of Homestead v. Johnson, 760 So.2d 80, 83 (Fla.2000). We conclude that the trial court failed to apply these principles, and as a result, misinterpreted the employment contract contested by the parties in this case. Accordingly, we reverse.
Paladyne Corporation appeals two final judgments in favor of the appellee, Ronald Lynn Weindruch. The first judgment awards damages to Mr. Weindruch for severance pay in the amount of $137,500, among several other awards which are not being contested in this appeal. The second judgment awards attorney's fees for *632 Mr. Weindruch, including fees for the time spent litigating the amount of fees. We will consider the issues raised by each judgment separately.
I. Interpretation of the Contract.
Mr. Weindruch began working for Paladyne in 1997. On February 1, 2000, while he was president of the corporation, Mr. Weindruch entered into a written employment agreement (the "Agreement"), with Paladyne. Paragraph 2 of the Agreement, entitled "Term," states in pertinent part:

Term. Subject to the provisions for the termination as hereafter provided, the term of this Agreement shall begin on the date hereof and shall terminate on January 31, 2001. Thereafter, this Agreement shall be automatically renewed for successive one-year terms unless either party notifies the other of non-renewal at least 30 days prior to the expiration of the then current term. The compensation and other benefits provided for herein shall be subject to annual review and adjustment where appropriate by the Company's Board of Directors.
Paragraph 10, entitled "Termination," sets out a number of ways that termination of the Agreement can be effected:
(i) Without Cause. Without cause, the Company may terminate this Agreement at any time upon 30 days written notice to the Employee. In such event, the Employee shall continue to receive Regular Compensation throughout the current Agreement period plus one additional year as more fully explained in Section 2 of this Agreement. The Employee shall be entitled to any bonuses fully accrued through the termination date.
(ii) With Cause. The Company may terminate the employment of the Employee hereunder immediately upon written notice thereof in the event of material fraud or dishonesty by the Employee in connection with his employment or if the Employee is convicted of a felony. In such event, the Company shall pay the Employee only such compensation as shall have Fully Accrued on the date of termination.
(iii) Termination by Employee. The Employee may terminate this Agreement at any time upon 30 days prior written notice to the Company. In such event, the Employee shall be entitled to receive his compensation only to the extent Fully Accrued on the date of termination.
Paladyne merged with E-commerce Support Centers, Inc., in late 2000 or early 2001, and Mr. Weindruch found himself with a new position in the surviving company entitled Executive Vice President Business Development. On December 27, 2001, Paladyne elected to send Mr. Weindruch written notice of its intent pursuant to paragraph 2 not to renew the Agreement for the term that would have begun on February 1, 2002, and declined to pay him any severance pay.
Mr. Weindruch sued Paladyne for breach of contract, alleging that as he was effectively "terminated" from his employment without cause under paragraph 10(i), he was entitled to severance pay for one year of "Regular Compensation," totaling $137,500. The case proceeded to nonjury trial. Because the trial court concluded that the Agreement was unambiguous, no extrinsic evidence was heard, except with respect to certain matters that are not germane to this discussion. The able trial judge concluded as a matter of law that the non-renewal of the Agreement under paragraph 2 was equivalent to a termination without cause under paragraph 10(i), and that Mr. Weindruch was, therefore, *633 entitled to receive damages in the amount of his severance pay.
Because the meaning of a contract and its effect are matters of law, we review cases concerning the interpretation of contract provisions by a de novo standard. See Dows v. Nike, Inc., 846 So.2d 595 (Fla. 4th DCA 2003); see also Paoli v. Natherson & Co., P.A., 750 So.2d 46 (Fla. 2d DCA 1999). Using this standard, we disagree with the conclusion that the non-renewal or expiration provision and the termination without cause provision were the same.
We noted at the outset that whenever possible, courts should give effect to all provisions of a contract. See Johnson, 760 So.2d at 84; Inter-Active Servs. v. Heathrow Master Ass'n, 721 So.2d 433, 435 (Fla. 5th DCA 1998). The construction placed on this contract by the trial court, however, essentially renders paragraph 2 of the document meaningless. We have adopted in similar cases the time-honored rule of construction that, "Where the contract is susceptible to an interpretation that gives effect to all of its provisions, the court should select that interpretation over an alternative interpretation that relies on negation of some of the contractual provisions." See, e.g., Inter-Active Servs., 721 So.2d at 435. There would be no point in having a non-renewal provision if the effect of not renewing the contract is identical to the effect of terminating the contract under paragraph 10(i). If the parties had intended severance pay to be a consequence of Paladyne's non-renewal, then they certainly could have agreed to do so with language to that effect in paragraph 2. As they did not, the clear meaning of these provisions is that there would be a severance package upon a termination under paragraph 10(i), but there would be no severance pay at the expiration of the contract term.
In Pitney-Bowes, Inc. v. Mestre, 517 F.Supp. 52 (S.D.Fla.1981), a federal district court construed a contract that used the separate terms "expiration" and "termination" to describe ways that the contract could end, and concluded that expiration was not equivalent to termination. Specifically, the court stated that:
By agreeing in that paragraph "that expiration of this agreement, or its termination pursuant to terms hereof, shall not in any way affect the operation [of preceding provisions]," it is apparent that the parties viewed the terms to possess distinct, if not mutually exclusive, meanings. Thus, whatever else the term "expiration" means, the Court concludes that, based upon a facial reading of the Amendment, that word was not meant to be synonymous with `termination' as used in paragraph 11(b).
Pitney-Bowes, 517 F.Supp. at 64. The same reasoning applies to the present contract. A facial reading of the two provisions leads us to the conclusion that the word "non-renewal" was not meant to be synonymous with "termination."
Mr. Weindruch argues that because the two provisions under consideration cross reference each other, they were intended to require severance pay no matter how Paladyne chose to end the contract, except in the case of a termination for cause. The plain language of the provisions reflect, however, that the cross references have the limited purpose of defining the life of the contract.
We conclude, therefore, that trial court erred in finding in favor of Mr. Weindruch on the issue of severance damages.
II. Attorney's Fees.
Mr. Weindruch recovered damages on a number of claims that are not contested in this appeal. At the conclusion of the proceedings the trial court awarded attorney's *634 fees in favor of Mr. Weindruch on the authority of Paragraph 17 of the contract between the parties, as well as section 448.08, Florida Statutes (2003). Paragraph 17 of the contract reads as follows:

Attorney's Fees. In the event of any litigation or arbitration proceeding arising out of this Agreement, the prevailing party shall be entitled to reasonable attorney's fees and expenses from the losing party, whether incurred before suit is brought, before or at trail (sic) or the arbitration proceeding, on appeal or in insolvency proceedings.
Section 448.08 entitled, "Attorney's fees for successful litigants in actions for unpaid wages," indicates that "The court may award to the prevailing party in an action for unpaid wages costs of the action and a reasonable attorney's fee." Inasmuch as we have reversed the final judgment of the trial court on the matter of severance damages, but recognizing that Mr. Weindruch was successful on several of his other causes of action, we remand the attorney's fees issue to the trial court for a determination regarding which party is the prevailing party, and for a reassessment of fees upon the making of that decision, and in light of our ruling. See Cardinal Inv. Group, Inc. v. Giles, 813 So.2d 262, 263 (Fla. 4th DCA 2002).
We note, however, that the trial court awarded fees to Mr. Weindruch for the time spent in litigating the amount of attorney's fees to be awarded. Because this issue is likely to arise again after remand, we address it in the context of the present appeal.
In this regard, we agree with the position of the Second District Court of Appeal, which applied the Supreme Court of Florida's decision in State Farm Fire & Cas. Co. v. Palma, 629 So.2d 830 (Fla. 1993), to cases arising under section 448.08. In National Portland Cement Co. v. Goudie, 718 So.2d 274, 275 (Fla. 2d DCA 1998), the Second District held that the prevailing party is entitled under section 448.08 to attorney's fees to establish entitlement to such an award, but not to establish the amount of the award. In fact, all appellate courts but the First District appear to agree that fees are not awardable for establishing the amount of the fee. See, e.g., Mediplex Const. of Fla. v. Schaub, 856 So.2d 13 (Fla. 4th DCA 2003); North Dade Church of God, Inc. v. JM Statewide, Inc., 851 So.2d 194 (Fla. 3d DCA 2003); Barron Chase Sec., Inc. v. Moser, 794 So.2d 649 (Fla. 2d DCA 2001); Mangel v. Bob Dance Dodge, Inc., 739 So.2d 720 (Fla. 5th DCA 1999); Seminole County v. Butler, 676 So.2d 451 (Fla. 5th DCA), review denied, 686 So.2d 581 (Fla. 1996). Contra, Diaz v. Santa Fe Healthcare, Inc., 642 So.2d 765 (Fla. 1st DCA 1994).
Mr. Weindruch attempts to avoid the holding in these cases by suggesting that his attorney's fee contract gives him an interest in the recovery of the fee. First of all, we find nothing in the attorney's fee contract that would avoid the holding of Palma. Secondly, as we pointed out in Mangel, the litigant's fee arrangement with his or her attorney is "not determinative of the fees he is entitled to recover as reasonable attorney's fees." Mangel, 739 So.2d at 724.
In summary, therefore, we reverse the determination that Mr. Weindruch was entitled to recover severance pay as damages, and remand for entry of a judgment in favor of Paladyne to conform to our holding. In addition, we reverse the award of attorney's fees for Mr. Weindruch, and remand for a determination of which party prevailed in this action. Finally, to avoid further litigation on this point, we hold that in reassessing fees the trial court should not grant fees to either *635 party for the time taken to litigate the amount of the award.
REVERSED and REMANDED.
SAWAYA, C.J., and GRIFFIN, J., concur.