JACOBUS, J.
 

 James H. Lowe timely appeals the final judgment entered in favor of Winter Park Condominium Limited Partnership (WPC). This matter arises out of a contract for purchase and sale of a residential condominium in Winter Park, Florida. On appeal, Lowe, the buyer, contends the court erred in entering a judgment against him, which permitted WPC, the seller, to retain a substantial portion of his deposit. We agree with Lowe’s contention and reverse.
 

 Lowe and WPC entered into the instant contract on April 17, 2006, before the condominium was constructed. Both parties executed the contract and Lowe deposited $185,694 with WPC in accordance with the terms of the contract. The deposit included upgrades for which Lowe prepaid an amount of $20,964. The contract required WPC to close on the condominium unit within two years of the date of execution.
 

 Initially, the closing was set for December 6, 2007. WPC was unable to close on that date and, therefore, set a new closing date on February 3, 2008. Lowe never closed on the property. Both parties contend the contract was breached by the other. There are no disputed issues of fact, and the court heard the matter on cross-motions for summary judgment. The court determined Lowe breached the contract and WPC was entitled to keep a
 
 *1020
 
 portion of his deposit. The court also awarded attorney’s fees to WPC as a result of Lowe’s breach.
 

 This court reviews this matter de novo because it was decided by summary judgment and there are no factual disputes.
 
 See Volusia County v. Aberdeen at Ormond Beach, L.P.,
 
 760 So.2d 126, 130 (Fla.2000). The court also reviews the legal interpretation of contractual terms de novo.
 
 See Whitley v. Royal Trails Prop. Owners’ Ass’n, Inc.,
 
 910 So.2d 381, 383 (Fla. 5th DCA 2005).
 

 There are two clauses in the contract that are relevant in this dispute. The significant portion of Paragraph 4 states:
 

 (b) For purposes of this Agreement, the construction of the Unit shall be deemed “substantially complete” when (i) Seller has obtained a temporary certificate of occupancy; and (ii) Seller has substantially completed the construction of the Unit in substantial conformance with the Plans and Specifications (as defined in paragraph 1) as certified by the architect for the Condominium or general contractor. Seller will notify Buyer at least thirty (30) days prior to the date that the consummation of the sale of the Unit to Buyer shall take place (“Closing Date”). If Buyer fails to close on or before the Closing Date, then Seller may treat such failure as a default subject to the terms of Article VT of Addendum No. 1 attached hereto and made apart hereof or Seller may, in its sole discretion, determine to extend the Closing Date upon payment to Seller by Buyer of an extension fee equal to the $350.00 per day, but in no event shall such extension extend beyond the twenty-four (24) month period as set forth in subpar-agraph (c) below. The extension fee shall not be applied to the Purchase Price for the Unit. No portion of the Purchase Price shall be held back or escrowed at Closing, and the Closing shall not be delayed pending completion of any items that Seller must complete or repair pursuant to Article VLA) of Addendum No. 1.
 

 The Closing shall be held in Orange County, Florida, unless the parties agree upon another location for Closing, at the hour and place designated by Seller....
 

 Paragraph 11(B) of Addendum No. 1 reads as follows:
 

 B. If Buyer asserts the existence of any encumbrance, encroachment or defect in title which renders title to the Unit unmarketable and which Buyer does not waive (all of which are called “Defects of Title”), Buyer shall give written notice of such Defects of Title to Seller within five (5) days after its receipt of the Commitment or at least five (5) days prior to the Closing Date, whichever is earlier. Notwithstanding the foregoing, Buyer acknowledges that it has reviewed and approved those documents set forth in the Addendum attached hereto labeled “Permitted Exceptions,” and Buyer shall not object to same. After its receipt of such notice, Seller may, but shall not be obligated to, remove or cure such Defects of Title. If Seller attempts to remove or cure such Defects of Title, Seller shall be entitled to a postponement of the Closing for a period of up to thirty (30) days in which to remove or cure such Defects of Title. If Buyer fails to timely provide such notice to Seller, then Buyer shall be deemed to have waived any such Defect of Title and accepted the condition of the title as satisfactory. Seller shall be entitled to (i) use the proceeds from the closing to cure or remove any Defect of Title; or (ii) provide Buyer with title protection against any such Defect of Title and such title insurance protection shall be deemed to satisfy Seller’s obli
 
 *1021
 
 gation to remove or cure any Defect of Title. If Seller is unable or unwilling to remove or cure all Defects of Title within such period, Buyer may elect to waive such Defects of Title or to terminate this Agreement by written notice to Seller within five (5) days after the earlier of (i) the expiration of such thirty (30) days, or (ii) the date of notice from Seller to Buyer stating that Seller is unable or unwilling to cure any such Defects of Title. If Buyer fails to provide Seller with written notice of termination of this Agreement within such five (5) day period, Buyer shall be conclusively deemed to have elected to waive any such Defects of Title and to have agreed to accept title to the Unit subject to such Defects of Title.
 

 It is undisputed that WPC notified Lowe by letter on November 1, 2007, that the closing date was scheduled for December 6, 2007. The written notice to close was a requirement of the contract. WPC never sent to Lowe, as required by the contract, a commitment for title insurance. However, Lowe examined the title himself and determined that WPC had not recorded the Declaration of Condominium. As a result, he notified WPC by letter on November 29, 2007, that there was a defect in his title because the Declaration had not been recorded and, therefore, his title was unmarketable.
 
 [1]
 
 Before sending the letter, Lowe had been orally notified by WPC’s closing agent that the closing would not occur on December 6th as scheduled, but would instead be rescheduled at a later date. WPC recorded the Declaration of Condominium on December 20, 2007, and notified Lowe that the new closing date would be February 3, 2008. Lowe refused to close on that date and took the position that the contract had been breached by WPC because it failed to close within 30 days after receiving the Notice of Defect, as required by Paragraph 11(B) of Addendum No. 1 of the contract. WPC claimed it had an absolute right to set the closing date as set forth in Paragraph 4 of the contract.
 

 On appeal, WPC argues that (1) it orally notified Lowe that the closing was not going to occur on December 6, 2007, and (2) because it could set a closing date at any time through April 16, 2008, Paragraph II of Addendum No. 1 was not in effect. Lowe agrees that WPC had the absolute right to set the closing date. However, he claims that once WPC selected a date and gave notice of that date pursuant to the terms of the contract, Paragraph II of Addendum No. 1 came into effect. Therefore, Lowe claims it was error to enter judgment in WPC’s favor because he complied with the terms of the contract by giving notice of the title defect and WPC failed to close within 30 days of receiving that notice. It should be noted that the contract contained a “time is of the essence” clause.
 

 We agree with Lowe’s interpretation of the contract. If we read the contract as WPC requests, Paragraph II of Addendum No. 1 will be rendered meaningless. While WPC had the absolute right to set a closing date, once it did, the time conditions of Paragraph II of Addendum No. 1 came into effect and WPC was bound by those terms. The rule of construction relating to contractual terms requires “courts to read provisions of a contract harmoniously in order to give effect to all portions thereof.”
 
 City of Homestead v. Johnson,
 
 760 So.2d 80, 84 (Fla.2000);
 
 Davis v. Ivey,
 
 984 So.2d 571, 573 (Fla. 5th DCA 2008);
 
 Paladyne Corp. v. Weindruch,
 
 867 So.2d 630, 631 (Fla. 5th DCA 2004). Lowe’s interpretation of the contract gives meaning to all its terms, all
 
 *1022
 
 the terms are harmonious with each other, and each term has effect.
 

 For these reasons, Lowe was entitled to return of his deposits under the contract. Also, as the prevailing party, he is entitled to attorney’s fees. Accordingly, the judgment in favor of Winter Park Condominium Limited Partnership is reversed and the matter is remanded for entry of a judgment in Lowe’s favor. .
 

 REVERSED and REMANDED.
 

 TORPY and EVANDER, JJ., concur.
 

 [1]
 

 . § 718.104(2), Fla. Stat.