NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

DARREN WHITE,                                )
                                             )
          Appellant,                         )
                                             )
v.                                           )          Case No. 2D19-1221
                                             )
FORT MYERS BEACH FIRE CONTROL                )
DISTRICT,                                    )
                                             )
          Appellee.                          )
_____      )

Opinion filed September 4, 2020.

Appeal from the Circuit Court for Lee
County; James R. Shenko, Judge.

Bradley P. Rothman of Weldon &
Rothman PL, Naples, for Appellant.

Andrew J. Salzman of Unice Salzman
Jensen, P.A., Trinity, for Appellee.


LaROSE, Judge.

          Darren White appeals the final summary judgment entered in favor of Fort

Myers Beach Fire Control District (the District) on his claims for breaches of contract

and covenant of good faith, reformation, and negligent misrepresentation. We have

jurisdiction. See Fla. R. App. P. 9.030(b)(1)(A). Mr. White argues, among other things,

that the existence of genuine issues of material fact precluded summary judgment. He

also chides the trial court for failing to exercise independent judgment when it adopted the District's proposed judgment without changes. We affirm.

## I. Background[1]

### A. Mr. White's Employment and Termination

The District employed Mr. White. The District's Board of Commissioners (the Board) promoted Mr. White to the position of fire chief. The Board's then-chair, David Brower, and its attorney, Richard Pringle, negotiated an employment agreement with Mr. White. The Board approved the agreement in October 2012. Certain provisions are key to our resolution of this appeal.

Section 2 provided as follows:

> The District hereby employs the Chief and the Chief hereby accepts employment as Fire Chief for the District with an effective date of October 1, 2012, and an ending date of September 30, 2015, subject, however to earlier termination or retirement as hereinafter provided. At the expiration date of September 30, 2015, this [a]greement shall be considered automatically renewed for one period of two (2) years provided neither party submits a written notice of termination to the other party at least ninety (90) days prior to September 30, 2015.

Section 3 provided how the agreement "may be terminated" prior to expiration. For example, if "official action to terminate[, without cause,] the Chief is approved," section 3(d) required the District to pay Mr. White "a single lump sum cash payment equal to

---

[1]We limit our recitation of the facts to those relevant to the arguments sufficiently raised on appeal. See Polyglycoat Corp. v. Hirsch Distribs., Inc., 442 So. 2d 958, 960 (Fla. 4th DCA 1983) ("When points, positions, facts and supporting authorities are omitted from the brief, a court is entitled to believe that such are waived, abandoned, or deemed by counsel to be unworthy.").

twenty four (24) months' salary due under this [a]greement or all the remaining month's salary due under this [a]greement, whichever is less."[2]

Section 18, a savings clause, stated:

> In case any one or more of the provisions of this [a]greement, or any amendment or supplement hereto, shall for any reason be held to be illegal or invalid, such illegality or invalidity shall not affect any other provision of this [a]greement, or any amendment or supplement hereto, but this [a]greement, or any amendment or supplement hereto, shall be construed and enforced as if such illegal or invalid provision had not been contained herein. The parties agree to immediately renegotiate any provision of this agreement that is held to be illegal or invalid. The expiration of this written [a]greement is not a dismissal of the Chief.

Section 23, a merger clause, also provided that "[t]he expiration of this written [a]greement is not a dismissal of the Chief." Section 6 required the Board to conduct at least one performance evaluation annually.

In February 2015, the Board's new chair, Carol Morris, sent Mr. White a nonrenewal letter:

> **Subject: Notice of Termination/Non-Renewal of Contract**
>
> This written Notice of Termination (Non-Renewal of Contract) is being provided in accordance with SECTION 2 - TERM, paragraph 1 of the EMPLOYMENT AGREEMENT BETWEEN FORT MYERS BEACH FIRE CONTROL DISTRICT AND DARREN WHITE. The Fort Myers Beach Fire Control District Board of Commissioners has voted not

_____

[2]The year before the parties negotiated the agreement, the legislature amended section 215.425(4)(a), Florida Statutes (2011), to limit severance pay for local government employees to twenty weeks. Ch. 2011-143, § 1, Laws of Fla. A severance provision that violates section 215.425 is illegal and void. See generally Gables Ins. Recovery, Inc. v. Citizens Prop. Ins. Corp., 261 So. 3d 613, 624 (Fla. 3d DCA 2018) ("[A]n agreement that is violative of a provision of a constitution or a valid statute, or an agreement which cannot be performed without violating such a constitutional or statutory provision, is illegal and void." (quoting Local No. 234 of United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada v. Henley & Beckwith, Inc., 66 So. 2d 818, 821 (Fla. 1953))).

to renew the above mentioned [sic] agreement which is effective until September 30, 2015. This action is being taken because the Board does not like the language and terms of the current contract.

This is not a termination covered under SECTION 3 – TERMINATION.

The District placed Mr. White on administrative leave on August 18, 2015. Attempts to negotiate a new agreement failed. The agreement expired by its terms on September 30, 2015, and the District then ended Mr. White's employment. He received no severance pay.

## B.    Mr. White's Complaint

Mr. White sued the District. He alleged various breaches of the agreement:

(a)    "failing and/or refusing to follow the procedures for termination outlined in Section 3 of the contract";

(b)    "failing and refusing to compensate [Mr. White] twenty-four (24) months of salary upon termination of the contract as outlined in Section 3 of the contract";

(c)    "failing and refusing to allow [Mr. White] to serve the additional two (2) year term provided for in the contract";

(d)    "improperly terminating the contract and/or by improperly terminating [Mr. White's] employment" on August 18, 2015;

(e)    "dismissing [Mr. White] due to the expiration of the contract";

(f)    "failing and refusing to immediately renegotiate [Mr. White's] contract when the terms were held to be invalid";

- 4 -

(g) "failing to provide [Mr. White] proper performance evaluations as set forth in Section 6"; and

(h) "failing and refusing to attempt to renegotiate a new contract with [Mr. White]."

Mr. White further alleged that the District "breached the implied covenant of good faith and fair dealing by failing and refusing to carry out the express terms of the contract . . . in good faith." For his reformation claim, Mr. White alleged:

> In the event the Court or jury finds that [Mr. White's] employment contract did not obligate [the District] to attempt to negotiate with [Mr. White] at the expiration of the contract and/or that [Mr. White's] employment contract does not provide [Mr. White] the income equivalent of five (5) years of employment (absent cause for termination), then due to a mistake of the draftsman, the intention of [Mr. White's] employment contract was unfulfilled.

Finally, Mr. White alleged that Chair Brower and Attorney Pringle negligently misrepresented to Mr. White that he would receive the full five-year-salaried amount "due under the contract and its automatic renewal provision" if he was terminated without cause, that the agreement's expiration "would not constitute a dismissal of [Mr. White]," and that section 3 applied to section 2's nonrenewal provision.

## C. Summary Judgment Proceedings

The District moved for summary judgment. It supported its motion with several documents, including the agreement, Chair Morris's letter, Mr. White's interrogatory answers, the Board's meetings minutes, and the depositions of Attorney Pringle and Chair Brower. The District argued that it did not breach the agreement because the agreement expired on September 30, 2015. The District also contended that it did not terminate Mr. White beforehand. Indeed, the Board's August 2015

meeting minutes reflected that it placed Mr. White on administrative leave with full salary and benefits through September 30, 2015, relieving him of his regular duties, except for emergencies. The District further argued that Mr. White could not present a breach-of-contract claim "predicated solely upon an implied covenant of good faith" absent a breach of any express term of the agreement.

Next, the District argued that summary judgment was appropriate for Mr. White's reformation claim because (1) he lacked the requisite evidence of a unilateral or mutual mistake or the District's fraudulent or inequitable conduct, and (2) the statute of frauds barred the claim. Additionally, the District contended that there was no basis to support Mr. White's negligent misrepresentation claim; Attorney Pringle and Chair Brower made no false statements to Mr. White.

Chair Brower testified in his deposition that he intended for Mr. White to be the fire chief for five years, but neither Chair Brower nor Attorney Pringle claimed they told Mr. White that the agreement was for an uninterrupted five-year term. Chair Brower knew about the nonrenewal provision and assumed that Florida law only permitted a maximum of three years per term. Attorney Pringle was adamant that the agreement was for three years, "with an ending date of September 30, 2015, with an automatic renewal provision for an additional two years." He explained there was a "difference between having the contract expire as opposed to terminating the contract." Chair Brower testified that he wanted section 2's "notice of termination" to follow section 3's termination procedures, but he recognized that nothing in the agreement stated that the notice was subject to section 3. Chair Brower testified that he did not recall ever discussing the nonrenewal provision with Mr. White. Attorney Pringle also affirmed that

- 6 -

section 2's "notice of termination" was not supposed to invoke section 3's termination procedures.

Mr. White opposed the summary judgment motion, filing his affidavit, Chair Brower's affidavit, and depositions excerpts of various Board members. Mr. White contended that summary judgment was inappropriate because the agreement was ambiguous and confusing. He further asserted that the District's interpretation of the agreement was unreasonable and contrary to the parties' intent that the District could not end Mr. White's employment without following the section 3 termination procedures.

Mr. White also argued that factual disputes precluded summary judgment. Mr. White asserted that the District terminated him without cause in August 2015, not September 2015. He then claimed that Chair Brower assured him that he would have five years of salary under the Agreement over two terms provided he was not terminated for cause. Mr. White conceded that Chair Brower explained that if the agreement expired, Mr. White and the Board would need to renegotiate the agreement and that Mr. White would not lose his job as long as renegotiation was successful. As mentioned earlier, such efforts bore no fruit.

At a hearing on the District's summary judgment motion, the trial court recited the parties' positions and questioned the parties as to their respective arguments. At the end of the hearing, the trial court stated that the interpretation of the agreement was for the court, not the witnesses. It found that the agreement was clear; there was an initial three-year term that expired after the District chose not to renew. The trial court also ruled that the District properly terminated Mr. White as an at-will employee after the agreement expired. The trial court directed the District to draft a detailed order consistent with its oral rulings and the parties' arguments.

The District sent its proposed order—which included a finding that the statute of frauds barred the reformation claim—to Mr. White for review. Mr. White objected to and requested the removal of the discussion of the limitation of severance benefits. The District relented and submitted an amended proposed order to the trial court. The trial court adopted the order, verbatim, and entered a final summary judgment against Mr. White.

## II.     Analysis

### A.     Summary Judgment

We review an order granting summary judgment de novo. Deutsche Bank Nat. Tr. Co. v. Hagstrom, 203 So. 3d 918, 920 (Fla. 2d DCA 2016). Summary judgment is appropriate where

> (1) no genuine issue of material fact exists, viewing every possible inference in favor of the party against whom summary judgment has been entered, Huntington Nat'l Bank v. Merrill Lynch Credit Corp., 779 So. 2d 396, 398 (Fla. 2d DCA 2000), and (2) "the moving party is entitled to a judgment as a matter of law," [Volusia County v. ]Aberdeen at Ormond Beach, 760 So. 2d [126, 130 (Fla. 2000)]. "If the record reflects the existence of any genuine issue of material fact or the possibility of any issue, or if the record raises even the slightest doubt that an issue might exist, summary judgment is improper." Holland v. Verheul, 583 So. 2d 788, 789 (Fla. 2d DCA 1991).

Alderman v. BCI Eng'rs & Scientists, Inc., 68 So. 3d 396, 399 (Fla. 2d DCA 2011); see also Fla. R. Civ. P. 1.510(c) (providing that summary judgment is proper where "the pleadings and summary judgment evidence on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law"). The moving party "has the burden of showing 'the complete absence of any

genuine issue of material fact.' " <u>Hagstrom</u>, 203 So. 3d at 920 (quoting <u>Amstone v.</u> <u>Bank of N.Y. Mellon</u>, 182 So. 3d 804, 806 (Fla. 2d DCA 2016)).

### 1. Breach of Contract and Covenant of Good Faith Claims

Mr. White argues that the trial court erroneously entered summary judgment on his breach of contract claim because (1) there is a genuine issue of fact regarding his termination date, (2) the trial court failed to correctly interpret the agreement, and (3) the trial court failed to rule on his claim of breach of the covenant of good faith and fair dealing. We address each claim in turn.

Administrative leave is not the same as termination. <u>Cf.</u> <u>Smith v. City of</u> <u>Fort Pierce</u>, 565 F. App'x 774, 777 (11th Cir. 2014) ("Although Smith had already been placed on administrative leave at the time she filed her EEOC Charge, Recor did not terminate her employment until after she filed the Charge."). The District's summary judgment evidence established that the District placed Mr. White on administrative leave in August 2015, where he remained, with full pay and benefits, until the agreement expired in September 2015. Mr. White believes that he was terminated in August 2015 because the District relieved him of most of his duties. Even Attorney Pringle noted in his deposition that Mr. White would no longer have duties while on administrative leave. Yet, the fact remains that the District did not terminate him during the initial three-year term of the agreement.

Mr. White faults the trial court for failing to draw all factual inferences and contract interpretations in his favor, for interpreting the agreement in an unreasonable manner, and for finding the agreement unambiguous. Looking at the provisions of sections 2, 3, 18, and 23 of the agreement together, he argues that the District had to

follow the termination procedures in section 3 when it declined to renew the agreement. We disagree.

We review the trial court's interpretation of the agreement de novo. See Fla. Inv. Grp. 100, LLC v. Lafont, 271 So. 3d 1, 4 (Fla. 4th DCA 2019). In the context of summary judgment:

> [i]f a contract's terms are clear and unambiguous, the language itself is the best evidence of the parties' intent and its plain meaning controls, warranting summary judgment. If, however, there are two reasonable interpretations of a contract, summary judgment is inappropriate because there is a genuine issue of material fact. This is because [w]hen a contract is ambiguous and the parties suggest different interpretations, the issue of the proper interpretation is an issue of fact requiring the submission of evidence extrinsic to the contract bearing upon the intent of the parties.

Pearson v. Caterpillar Fin. Servs. Corp., 60 So. 3d 1168, 1171 (Fla. 4th DCA 2011) (second alteration in original) (quoting Palm Beach Pain Mgmt., Inc. v. Carroll, 7 So. 3d 1144, 1145-46 (Fla. 4th DCA 2009)). "A reasonable interpretation is preferred to one which is unreasonable, and an interpretation leading to an absurd conclusion must be abandoned for one more consistent with reason and probability." Hunt v. First Nat'l Bank of Tampa, 381 So. 2d 1194, 1197 (Fla. 2d DCA 1980) (first citing Bouden v. Walker, 266 So. 2d 353, 354 (Fla. 2d DCA 1972), then citing Paddock v. Bay Concrete Indus., Inc., 154 So. 2d 313, 316 (Fla. 2d DCA 1963)). Also, "[a]n interpretation of a contract which gives a reasonable, lawful and effective meaning to all of the terms is preferred to an interpretation which leaves a part unreasonable, unlawful or of no effect." Fla. Inv. Grp. 100, 271 So. 3d at 5 (quoting Herian v. Se. Bank, N.A., 564 So. 2d 213, 214 (Fla. 4th DCA 1990)).

- 10 -

Section 3 provides procedures to terminate Mr. White during the term of his employment. Section 2 clearly states that the agreement's initial three-year term expired on September 30, 2015; section 2 only references section 3's termination provisions with an eye towards "early termination or retirement" during the initial term of the employment. Neither occurred during the initial term. If the parties intended section 3's termination procedures to apply to the nonrenewal option, they could have said so in section 2. See, e.g., Paladyne Corp. v. Weindruch, 867 So. 2d 630, 633 (Fla. 5th DCA 2004) ("If the parties had intended severance pay to be a consequence of Paladyne's nonrenewal, then they certainly could have agreed to do so with language to that effect in paragraph 2. As they did not, the clear meaning of these provisions is that there would be a severance package upon a termination under paragraph 10(i), but there would be no severance pay at the expiration of the contract term.").

Additionally, sections 18 and 23 state that expiration is not "dismissal" or termination, which would trigger section 3. That is, the agreement's expiration, alone, would not end Mr. White's employment as fire chief. He could still be the fire chief, but neither he nor the District would be subject to the terms of an expired agreement. These sections reflect that expiration, or nonrenewal, is different from termination subject to the section 3 procedures. See id. (concluding from a facial reading of two provisions that "nonrenewal" and "termination" were not synonymous).

We are not convinced that section 2's mention of the "notice of termination" was a reference to section 3 or the procedures set forth in section 3. Section 3 does not make any mention of a "notice of termination" or of the nonrenewal option. In fact, section 3(d) requires severance pay when Mr. White's employment is terminated. The language of section 3 does not provide that the procedures apply when

- 11 -

the agreement expires or is not renewed.  Moreover, if the effect of not renewing the agreement was to terminate the agreement pursuant to section 3, there would be no point to include the nonrenewal provision or state that the agreement expired on September 30, 2015.  See id. ("There would be no point in having a non-renewal provision if the effect of not renewing the contract is identical to the effect of terminating the contract under paragraph 10(i).").

Mr. White's interpretation negates the nonrenewal provision.  This unreasonable interpretation creates no ambiguity.  See Auto Club Ins. Co. of Fla. v. Estate of Lewis, 285 So. 3d 383, 386 (Fla. 5th DCA 2019) ("Because the estate's interpretation is unreasonable, it does not create an ambiguity in the policy.").  The trial court's interpretation, on the other hand, was reasonable and gave effect to the entire agreement.  Cf. Paladyne Corp., 867 So. 2d at 633 ("Where the contract is susceptible to an interpretation that gives effect to all of its provisions, the court should select that interpretation over an alternative interpretation that relies on negation of some of the contractual provisions." (quoting Inter–Active Servs. v. Heathrow Master Ass'n, 721 So. 2d 433, 435 (Fla. 5th DCA 1998))).  Accordingly, the trial court correctly entered summary judgment based on the agreement's plain meaning.[3]  See Pearson, 60 So. 3d at 1171.

_____

[3]Mr. White suggests on appeal that the trial court relied on parol evidence in the order, but the trial court merely agreed with Attorney Pringle's legal assessment that there was a difference between expiration and termination.

Additionally, although not decisive, the agreement's merger clause, section 23, is also highly persuasive that the parties did not intend any other meaning than the plain meaning.  See Jenkins v. Eckerd Corp., 913 So. 2d 43, 53 (Fla. 1st DCA 2005) ("[A] merger clause is a highly persuasive statement that the parties intended the agreement to be totally integrated and generally works to prevent a party from introducing parol evidence to vary or contradict the written terms.").

Because there is no breach of contract, Mr. White's contention that the District breached the implied covenant of good faith and fair dealing necessarily fails. Cf. Snow v. Ruden, McClosky, Smith, Schuster & Russell, P.A., 896 So. 2d 787, 792 (Fla. 2d DCA 2005) ("Because the implied covenant is not a stated contractual term, . . . [t]here can be no cause of action for a breach of the implied covenant 'absent an allegation that an express term of the contract has been breached.' " (quoting Ins. Concepts & Design, Inc. v. Healthplan Servs., Inc., 785 So. 2d 1232, 1234 (Fla. 4th DCA 2001))); cf., e.g., Ahearn v. Mayo Clinic, 180 So. 3d 165, 170 (Fla. 1st DCA 2015) ("Since Ahearn's individual breach of contract claim was extinguished, any claim for breach of the implied covenant of good faith and fair dealing is also extinguished."); Burger King Corp. v. E-Z Eating 8th Corp., No. 07-20181-CIV, 2008 WL 11330723, at *7 (S.D. Fla. May 22, 2008) (affirming summary judgment, reasoning that "since BKC did not breach the franchise agreement, Defendants' claim for breach of the implied covenant of good faith and fair dealing fails as a matter of law"), aff'd sub nom. Burger King Corp. v. E-Z Eating, 41 Corp., 572 F.3d 1306 (11th Cir. 2009).

## 2. Reformation Claim

Mr. White contends that the trial court erroneously entered summary judgment on his reformation claim because "there are disputed issues of material fact as to whether the actual agreement reflected a mutual mistake," or at least a unilateral mistake. The alleged mistake, according to Mr. White, was that the parties intended to pay Mr. White at least five years of salary absent termination for cause, or that he would

not lose his job because the contract expired.[4]  Mr. White also argues that the trial court erroneously found that the statute of frauds barred reformation.

A cause of action for reformation "must allege that, as a result of a mutual mistake or a unilateral mistake by one party coupled with the inequitable conduct of the other party, the . . . contract fails to express the agreement of the parties." Romo v. Amedex Ins. Co., 930 So. 2d 643, 649 (Fla. 3d DCA 2006).  "A mistake is mutual when the parties agree to one thing and then, due to either a scrivener's error or inadvertence, express something different in the written instrument." Enter. Leasing Co. v. Demartino, 15 So. 3d 711, 715 (Fla. 2d DCA 2009) (quoting Providence Square Ass'n v. Biancardi, 507 So. 2d 1366, 1372 (Fla. 1987)).

Mr. White shows no wrongful or inequitable conduct by the District. Moreover, there was no genuine disputed issue of material fact that there was a mutual or unilateral mistake; the agreement provided the terms the parties intended.  The agreement provided that its expiration alone would not result in Mr. White's termination. The agreement also provided that Mr. White would receive five years of salary if he was

---

[4]Mr. White also asserts that there was a mutual mistake in failing to include a provision requiring the Board to renegotiate the agreement in the event it expired.  However, reforming the contract to include such a provision would be pointless because the provision would not create a contractual right to renew.  See State, Dep't of Corr. v. C & W Food Serv., Inc., 765 So. 2d 728, 729 (Fla. 1st DCA 2000) ("Because the parties have not yet agreed on the essential terms for the period in which the contract could be renewed, they do not have an enforceable contract for that period.  An agreement to negotiate the terms of a renewal does not create a contractual right to renew.").  Thus, Mr. White was not entitled, as a matter of law, to reformation to include this provision, see Kartzmark v. Kartzmark, 709 So. 2d 583, 586 (Fla. 4th DCA 1998) ("Logically, before a court of equity can reform an instrument, the reformation must create an enforceable obligation.  If the parties had no power to make such a contract in the first place, the court cannot make it for them."), and summary judgment was proper.

terminated without cause, as long as the agreement did not expire.  Thus, the agreement provided the terms to which the parties agreed.

Mr. White admitted that Chair Brower explained that if the agreement expired, Mr. White and the Board would need to renegotiate the agreement and that Mr. White would not lose his job as long as renegotiation was successful.  Chair Brower stated in his affidavit that their intent was that "Mr. White would receive the full amount due under the contract and it's automatic renewal provision -- five (5) years (the three[-]year term plus the two[-]year term)."  (Emphasis added).  This evidence showed that the parties intended to have the automatic renewal provision and that the full five-year amount was due only if the agreement automatically renewed; the agreement reflected this intent.

Where Mr. White's evidence conclusively contradicted his claim of mistake, summary judgment was appropriate.  Cf. Cont'l Cas. Co. v. Wilkerson ex rel. Wilkerson, 563 So. 2d 1128, 1129 (Fla. 4th DCA 1990) ("Suffice it to say that the evidence presented by appellee did not conclusively refute the allegations of appellant's complaint [that there was a mutual mistake], as appellee must do in order to be entitled to summary judgment.").  The trial court's apparent erroneous ruling that the statute of frauds barred the reformation claim does not warrant reversal because summary judgment was otherwise appropriate.[5]  Cf. Malu v. Sec. Nat'l Ins. Co., 898 So. 2d 69, 73 (Fla. 2005) ("[T]he 'tipsy coachman rule' . . . allows an appellate court to affirm a

_____

[5]See Miley v. Miley, 402 So. 2d 557, 558 (Fla. 2d DCA 1981) ("The statute of frauds is not a bar to reformation of a land contract. . . .  We also do not think the parol evidence rule has application where mutual mistake is alleged.  Otherwise, reformation would not be an available remedy under any circumstance." (citation omitted)).

decision despite a finding of error in the lower court's reasoning as long as there is an alternative basis to justify affirming the decision.").

### 3. Negligent Misrepresentation Claim

Mr. White argues that the trial court erred in entering summary judgment on his negligent misrepresentation claim because the agreement was ambiguous and "the record is replete with competent and substantial evidence supporting" the claim. He specifically asserts that "the record shows the District denied [Mr.] White compensation and terminated [his] employment upon the expiration of the [a]greement, contrary to Chair Brower['s] and Attorney Pringle's express representations made on behalf of the District."

We already explained that the agreement was unambiguous. As for the negligent misrepresentation claim, it requires:

> (1) . . . a misrepresentation of material fact; (2) the represener either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false; (3) the represener intended to induce another to act on the misrepresentation; and (4) injury resulted to a party acting in justifiable reliance upon the misrepresentation

Baggett v. Electricians Local 915 Credit Union, 620 So. 2d 784, 786 (Fla. 2d DCA 1993) (citing Atlantic Nat'l Bank of Fla. v. Vest, 480 So. 2d 1328, 1331 (Fla. 2d DCA 1985)).

Here, Mr. White maintained that Chair Brower stated the agreement would provide five years of salary over two terms if he was not terminated for cause, that he could not be terminated simply because the agreement expired, and that Mr. White would not lose his job upon the agreement's expiration if renegotiations were successful. Attorney Pringle made similar statements. Thus, no genuine issue of

material fact existed, and summary judgment was proper.[6]  See Jallali v. Nova Se.

Univ., Inc., 55 So. 3d 665, 665 (Fla. 4th DCA 2011) ("[T]he defendant's affidavits

established without genuine issue of material fact that . . . its representations of those

decisions to the examining board were true.  Thus, the defendant was entitled to

summary judgment on both of the plaintiff's claims.").

**B.      The Trial Court's Independent Judgment**

Finally, Mr. White argues for reversal because the trial court failed to

exercise independent judgment when it adopted, verbatim, the District's proposed order.

Florida law "does not prohibit the verbatim adoption of a judgment that has

been proposed by a party."  Bishop v. Bishop, 47 So. 3d 326, 328 (Fla. 2d DCA 2010).

However, "we will reverse any judgment entered under circumstances that create an

appearance that the judgment does not reflect the judge's independent decision-

making."  Id. (quoting M.D. v. Dep't of Children & Family Servs., 924 So. 2d 827, 831

(Fla. 2d DCA 2005)).

We evaluate whether the trial court exercised its independent judgment by

considering numerous factors:

> 1) the timing of the order; 2) the opportunity for the opposing
> party to object; 3) the extent to which the court made
> substantive changes to the proposed order; 4) the extent to
> which the court participated in the trial; 5) the presence of

---

[6]Moreover, Mr. White's claim could not, as a matter of law, be based on the District's failure to perform under the agreement.  See Island Travel & Tours, Ltd. v. MYR Indep., Inc., 45 Fla. L. Weekly D704, D704 (Fla. 3d DCA Mar. 25, 2020) ("It is a fundamental, long-standing common law principle that a plaintiff may not recover in tort for a contract dispute unless the tort is independent of any breach of contract.  Because MYR's tort claims are ultimately based on the same underlying conduct giving rise to its contract claim . . . we hold that MYR is, as a matter of law, unable to establish its claims for fraud in the inducement and negligent misrepresentation." (footnote and citations omitted)).

errors or omissions in the order; and 6) the presence or absence of oral findings on the record.

D.R. v. Dep't of Children & Families, 236 So. 3d 1175, 1177 (Fla. 1st DCA 2018) (citing In re T.D. v. Dep't of Children & Family Servs., 924 So. 2d 827, 829 (Fla. 2d DCA 2005)).  In Perlow v. Berg-Perlow, 875 So. 2d 383, 390 (Fla. 2004), the Florida Supreme Court explained:

> When the trial judge accepts verbatim a proposed final judgment submitted by one party without an opportunity for comments or objections by the other party, there is an appearance that the trial judge did not exercise his or her independent judgment in the case.  This is especially true when the judge has made no findings or conclusions on the record that would form the basis for the party's proposed final judgment.  This type of proceeding is fair to neither the parties involved in a particular case nor our judicial system.
>
> . . . While a trial judge may request a proposed final judgment from either or both parties, the opposing party must be given an opportunity to comment or object prior to entry of an order by the court.  Moreover, the better practice would be for the trial judge to make some pronouncements on the record of his or her findings and conclusions in order to give guidance for preparation of the proposed final judgment.

(Footnote omitted.)

Mr. White concedes that he had an opportunity to object to the proposed order and that the timing of the order does not reflect a lack of independent judgment. Rather, he argues that factors three, five, and six show that the trial court did not exercise its independent judgment.  For factor three, the trial court did not make any substantive changes to the proposed order.  However, Mr. White made only one specific objection to the proposed order, and the District complied with his request.

As for factor five, Mr. White alleges that the adopted order included the proposed order's numerous factual and legal errors.  We agree with only one error, i.e.,

- 18 -

the legal conclusion that the statute of frauds prohibited the reformation claim.  But again, Mr. White did not object to this error to the trial court, and it is one error in a fourteen-page judgment.  Cf. Bishop, 47 So. 3d at 328 (agreeing "final judgment contain[ing] errors and omissions . . . create[d] the appearance that the trial court did not engage in independent decision-making" where the "Wife enumerate[d] approximately twenty errors, omissions, and irregularities").

For factor six, Mr. White asserts that the trial court "made extremely limited oral findings" and failed to even reference issues that were addressed in the written order.  See, e.g., E.T. v. Dep't of Children & Family Servs., 887 So. 2d 418, 419 (Fla. 2d DCA 2004) (reversing the verbatim adoption of the proposed final judgment where the trial court did not make any oral findings and the trial court signed the order the day the proposed order was submitted).  We disagree.  Throughout the hearing, the trial court recited a summary of the facts and issues and actively engaged with the parties.  The trial court made several oral findings and rulings and requested the District to draft a judgment consistent with its rulings.  Thus, unlike in E.T., 887 So. 2d at 419, the trial court made some factual findings and conclusions, giving the District guidance for preparing the proposed judgment in accordance with Perlow, 875 So. 2d at 390.

The circumstances in this case do not cross the line and do not create an appearance that the trial court failed to exercise independent judgment.

### III.    Conclusion

After careful review of the record before us, we conclude that the trial court properly entered summary judgment for the District.  Accordingly, we affirm.

Affirmed.

CASANUEVA and MORRIS, JJ., Concur.